26 October 2000

No.  2--99--1061

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

In
 
re
 HERMAN NITZ, SR.,         ) Appeal from the Circuit Court

                                ) of Du Page County.

Petitioner-Appellee        )

                                ) No. 99--CH--0167

                                )

                                )

                                ) Honorable

(Safeco Life Insurance Company, ) Terrence M. Sheen,

Intervenor-Appellant).          ) Judge, Presiding.

JUSTICE GALASSO delivered the opinion of the court:

The intervenor, Safeco Life Insurance Company (Safeco), appeals from an order of the circuit court of Du Page County approving the petitioner’s, Herman Nitz, Sr.’s, request to make an assignment of his benefits under a structured settlement agreement. We reverse the order of the trial court.

The record in this case reveals the following facts.  The petitioner filed a complaint against certain defendants, not parties to this appeal, alleging negligence that resulted in injuries to him and seeking money damages.  Subsequently, the petitioner entered into a structured settlement agreement with National Union Fire Insurance Company (also not a party to this appeal), acting on behalf of the defendants.  Under the settlement agreement, the petitioner was to receive a life annuity that paid the petitioner $3,000 per month, with 25 years guaranteed, increasing by 2% annually.  The agreement provided in pertinent part as follows:

"Plaintiff is and shall be a general creditor to the Defendant and/or the Insurer.  Said payments to Plaintiff required herein cannot be accelerated, deferred, increased or decreased by the Plaintiff and no part of the payments called for herein or any assets of the Defendant and/or the Insurer is to be subject to execution or any legal process for any obligation in any manner, 
nor shall the Plaintiff have the power to sell or mortgage or encumber same or any part thereof, not anticipate the same, or any part thereof, by assignment or otherwise.
"  (Emphasis added.)

The agreement further provided, however, that the insurer could make a " 'qualified assignment' within the meaning of Section 130(c) of the Internal Revenue Code of 1986, of the Defendant’s and/or the Insurer’s liability to make the periodic payments required herein."  The assignment was duly made to Safeco Assigned Benefits Service Company (Sabsco).  Pursuant to its rights under the agreement, Sabsco purchased an annuity policy from Safeco to fund its liability to make the periodic payments to the petitioner.

On February 8, 1999, pursuant to section 155.34 of the Illinois Insurance Code (215 ILCS 5/155.34 (West 1998)), the petitioner filed a petition seeking court approval of an assignment of certain of the periodic payments due him under his structured settlement agreement to Singer Asset Finance Company (Singer).  He further requested that the assigned benefits be paid to a trust at an address in New York.  Upon notice of the filing of the petition, Safeco filed an appearance and objections to the petition.  The petitioner filed a response to Safeco’s objections, raising, 
inter
 
alia
, the question of Safeco’s standing to assert a violation of the settlement agreement since it was neither a party to the agreement nor in privity with any party to the agreement. However, at the hearing on the petition, the petitioner did not contest Safeco’s participation in the proceedings.

After hearing the testimony of the petitioner and the arguments of counsel, the trial court found that, while there could be no permanent assignment under the settlement agreement, the agreement did not prohibit redesignation of the payments, and, therefore, the petitioner was not making an assignment that was prohibited under the settlement agreement.  However, the trial court also stated as follows:

"In light of that, the court will rule as follows: No. 1, although the court finds that any further assignments will clearly not be in your best interest, Mr. Nitz, this one in and of itself, since he is under no disability and on the basis of the fact that he wants to get rid of the home, the court finds that it may not be absolutely prohibitively against his best interest.  It may not be wise to do, but what’s wise to do and what’s in your best interest are obviously two different things.  I would not recommend you do this, but the court never can give advise [
sic
] to any party.  So in and of itself the assignment does not require the court to rule that it’s absolutely contrary to your best interest."

The trial court approved the assignment, and Safeco filed a timely notice of appeal.

We address, first, the petitioner’s argument that Safeco lacks standing to bring this appeal.  The petitioner points out that Safeco is merely the holder of the funds, and its only duty is to make the periodic payments as directed by Sabsco or the petitioner. The petitioner maintains that Safeco has suffered no injury as a result of the trial court’s order, since the order only requires it to redirect the payments to a new address under the petitioner’s name.  Finally, the petitioner notes that Sabsco, the owner of the annuity, chose not to contest the petition.

Standing in Illinois requires only some injury in fact to a legally cognizable interest.  
Greer v. Illinois Housing Development Authority
, 122 Ill. 2d 462, 492 (1988); see also 
City of Carbondale v. City of Marion
, 210 Ill. App. 3d 870 (1991).  In order to determine whether a party has standing, the court must determine whether the party would be benefitted by the relief granted.  
Board of Trustees of Community College District No. 508 v. Rosewell
, 262 Ill. App. 3d 938, 954 (1992).

The above cases, relied on by the petitioner, concern standing in the trial court as opposed to standing on appeal, which is the issue before this court.  This court has held that any party to a case may seek appellate review from a final judgment that is adverse to his interests, and whether the party was actually aggrieved does not determine his right to appeal.  See 
Hamann v. Sumichrast
, 222 Ill. App. 3d 962, 986 (1991).  A party has standing to appeal where he or she has some real interest in the cause of action or a legal or equitable interest in the subject matter of the controversy.  
Duncan v. Church of the Living God
, 278 Ill. App. 3d 588, 593 (1996).  Finally, a party may challenge any judgment adverse to its interests.  
St. Paul Fire & Marine Insurance Co. v. Downs
, 247 Ill. App. 3d 382, 390 (1993).  Even a nonparty has standing to appeal if he has a direct, immediate, and substantial interest in the subject matter that would be prejudiced by the judgment or benefitted by its reversal.  
Downs
, 247 Ill. App. 3d at 390.

Safeco’s objections to the petition in this case were accompanied, 
inter
 
alia
, by the affidavit of Kevin Woods, employed by Safeco in its settlement annuities department.  In his affidavit, Mr. Woods stated that the attempted or proposed assignments of structured settlement annuity payments resulted in burdensome administrative problems such as staffing changes to handle correspondence and to follow up tasks in order to respond to information and processing requests related to the proposed or attempted assignments and increased legal and administrative expenses.  Mr. Woods also stated that Safeco was concerned about the potential for double liability and tax ramifications.

In light of the adverse financial and administrative impact Safeco alleges it would suffer if the order approving the assignment was affirmed, we conclude that Safeco has standing to appeal from that order.  Compare 
Midland States Life Insurance Co. v. Hamideh
, 311 Ill. App. 3d 127 (1999) (part of the rationale behind Illinois lottery law’s prohibition against assignment of lottery proceeds was the additional financial burden to the state).

We now turn to the issues raised by this appeal.

Section 155.34 states in pertinent part as follows:

"(b) No person who is the beneficiary of a structured settlement of a claim for personal injury may assign in any manner the payments of the settlement without prior approval of the circuit court of the county where an action was or could have been maintained."  215 ILCS 5/155.34(b) (West 1998).

We observe, first, that section 155.34 was enacted by the legislature to protect structured settlement recipients.  90th Ill. Gen. Assem., House Proceedings, April 10, 1997, at 94-104.  The legislature was concerned that such persons were accepting offers of ready, but deeply discounted, cash from companies in exchange for their settlement annuity payments and then ending up penniless and without resources in the future.  See 90th Ill. Gen. Assem.,  House Proceedings, April 10, 1997, at 96-97 (statements of Representative Leitch).  The clear language of section 155.34(b) requiring court approval for assignments of payments presupposes that the payments are in fact assignable.  Where a structured settlement agreement does not permit the payments to be assigned, the court’s authority to act on a petition seeking approval of the assignment of payments under such an agreement is not invoked, and the petition should be dismissed.  Therefore, we must first determine the assignability of the payments under the terms of the structured settlement agreement in this case before we can uphold the trial court’s exercise of discretion in approving the assignment.  See 
Green v. Safeco Life Insurance Co.
, 312 Ill. App. 3d 577, 580 (2000) (court’s approval or disapproval of an assignment of structured settlement payments under section 155.34 is reviewed under an abuse of discretion standard).  With the foregoing in mind, we turn to Safeco’s first issue on appeal.

Safeco contends that the granting of the petition that sought assignment of the settlement payments was inconsistent with the trial court’s finding that the petitioner was seeking a redesignation of benefits rather than an assignment.

There is no dispute that the structured settlement agreement in this case contained an antiassignability provision.  However, while the trial court determined that the settlement agreement prohibited the petitioner from "permanently" assigning any of his payments under the settlement agreement, it determined that the petitioner’s redesignation of his payments was not a "permanent" assignment and, therefore, not prohibited under the terms of the settlement agreement.

Construing the language of a contract is a question of law, and we review a trial court’s determination of a contract 
de
 
novo
. 
Henderson v. Roadway Express
, 308 Ill. App. 3d 546, 548 (1999), 
appeal denied
, 188 Ill. 2d 564 (2000).  When construing a contract, our duty is to effectuate the intent of the parties to the contract.  
Henderson
, 308 Ill. App. 3d at 548.  The intent of the parties must be determined from the plain and ordinary meaning of the language of the contract unless the contract is ambiguous. 
Henderson
, 308 Ill. App. 3d at 548.  Parties to a contract are free to include any terms they choose, as long as those terms are not against public policy and do not contravene some positive rule of law.  
Green
, 312 Ill. App. 3d at 581.  Such a contract is binding on both parties, and it is the duty of the court to construe it and enforce the contract as made.  
Green
, 312 Ill. App. 3d at 581.

The plain language of the settlement agreement prohibits all assignments, whether they are temporary or permanent in nature. Paragraph 3 of the agreement specifically states that the petitioner does not have the power "to sell or mortgage or encumber [the payments], or any part thereof, 
nor anticipate same, or any part thereof, by assignment or otherwise
."  (Emphasis added.) Further, the agreement between the petitioner and Singer, which was attached as an exhibit to the petition, is captioned "Purchase Agreement."  Under the terms of that agreement, the petitioner "sells, transfers, assigns, sets over and conveys" to Singer a portion of his periodic payments under the settlement agreement. Therefore, contrary to the trial court’s finding, the transaction between the petitioner and Singer was substantially more than a redesignation of where the payments should be sent.  Finally, if in fact all the petitioner was seeking was to change the location of where he wished his payments sent, as opposed to making an assignment, there would be no need to file a petition under section 155.34.

The petitioner responds that, in light of the qualified assignment entered into by National Union and Sabsco, the antiassignment provisions of paragraph 3 of the settlement agreement do not apply.  Instead, the petitioner asserts that paragraph 4, which deals with the qualified assignment, applies. Paragraph 4 provides in pertinent part as follows:

"If the liability to make the periodic payments is assigned by way of a 'qualified assignment':

a) The periodic payments from the Assignee cannot be accelerated, deferred, increased or decreased by the Plaintiff[.]"

The petitioner maintains he was free to make an assignment since that is not prohibited under subparagraph (a).

As we previously stated, when construing a contract our duty is to effectuate the intent of the parties.  
Henderson
, 308 Ill. App. 3d at 548.  Both the settlement agreement and the uniform qualified assignment utilize the qualified assignment language of section 130(c)(2)(B) of the Internal Revenue Code.  26 U.S.C. §130(c)(2)(B) (1994).  Under this language, in order to receive the favorable tax treatment accorded structured settlement agreements, the structured settlement recipient can receive the settlement payments only when they are due and cannot accelerate the payments or otherwise derive present economic benefit from payments due in the future.  
Henderson
, 308 Ill. App. 3d at 552, United States Treasury Department, General Explanations of the Administration’s Revenue Proposals, at 20 (February 1998).

The inclusion of the antiassignability language in both the structured settlement agreement and the qualified assignment strongly suggests that the parties intended to take advantage of the favorable tax benefits afforded structured settlements. Paragraph 4 deals with National Union’s right to enter into a "qualified assignment" so as to preserve the favorable tax treatment.  If paragraph 4 is read to give the petitioner the right to assign his periodic payments, the purpose of the antiassignment language in paragraph 3 could be thwarted.  Therefore, we will not read the omission of antiassignability language in paragraph 4 as granting the petitioner the right to assign his periodic payments.

We conclude that the settlement agreement in this case prohibited the assignment of any kind and for any duration of the periodic payments due to the petitioner and that the trial court erred in determining that the petitioner was merely redesignating his payments rather than assigning them to Singer.

The petitioner then argues that, even if he was attempting a permanent assignment and that paragraph 3 applied, the antiassignability provision would be void.

Recently, the Appellate Court, Fourth District, addressed the same argument in a similar factual context in 
Henderson
.  In that case, Henderson entered into a structured settlement agreement with Roadway.  In language identical to that of the agreement in the case before us, the agreement prohibited Henderson from assigning his payments but permitted Roadway to make a qualified assignment of its liability.  Thereafter, Roadway assigned its liability to Keyport Life Insurance Company, which, in turn, purchased an annuity from Liberty Life Assurance Company.  As did the petitioner here, Henderson attempted to assign a portion of his future payments to Singer in exchange for a lump-sum payment and filed a petition for court approval pursuant to section 155.34. The trial court denied the petition based upon the antiassignment provision in the settlement agreement.  
Henderson
, 308 Ill. App. 3d at 547-48.  The reviewing court affirmed the decision of the trial court.  
Henderson
, 308 Ill. App. 3d at 551-52.

The court began its analysis by noting that Illinois had not previously addressed the specific issue of whether a court may disregard an antiassignment provision in a structured settlement agreement. 
Henderson
, 308 Ill. App. 3d at 550.  From the authorities reviewed by the court, it is clear that under Illinois law, in general, such clauses are looked upon with disfavor and will be upheld only after being subjected to strict interpretation favoring nonenforceability.  However, after reviewing three recent federal cases, all of which involved antiassignment clauses in structured settlement agreements, as well as the tax implications of a structured settlement agreement, the 
Henderson
 court concluded that the antiassignment provision was a bargained-for provision that was intended to benefit all parties and, therefore, was enforceable against Henderson.  
Henderson
, 308 Ill. App. 3d at 551.

Henderson
 was followed in 
Green
.  
Green
 presented a factual scenario virtually identical to 
Henderson
 and the case before us.  Green and Redland Insurance Company entered into a structured settlement agreement that contained an antiassignment clause as well as a provision allowing for a qualified assignment.  Redland made a "qualified assignment" to Sabsco, which, in turn, purchased an annuity from Safeco.  The annuity contract also contained an antiassignment clause.  Green entered into an assignment agreement with Stone Street, which was approved by the trial court in accordance with section 155.34.  On appeal, the reviewing court agreed with the analysis in 
Henderson
 and reversed the trial court, finding that the plain and ordinary meaning of the language of the antiassignment provision prevented Green from making an assignment of his periodic payments and that the trial court abused its discretion by failing to uphold the clear terms of the settlement agreement.  
Green
, 312 Ill. App. 3d at 581; see also 
Piasecki v. Liberty Life Assurance Co.
, 312 Ill. App. 3d 872 (2000).

We note that the Appellate Court, Fifth District, has also recently addressed the issue of assignability of structured settlement payments.  See 
In re Estate of Powless
, 315 Ill. App. 3d 859 (2000). Finding the payments assignable, the court distinguished 
Green
 and 
Henderson
 on the basis of the total absence of any antiassignment language in either the structured settlement agreement or the annuity contract in the case before it.  
Powless
, 315 Ill. App. 3d at 864.  Therefore, 
Powless
 is distinguishable from the case before us.

Anticipating Safeco’s reliance on the decision in 
Henderson
, the petitioner argues that the decision in 
Henderson
 was based upon the particular facts of that case and that the 
Henderson
 court failed to take into consideration the legislative history of section 155.34 or Illinois case law precedent disfavoring restraints on alienation.  We disagree.  The 
Henderson
 case presented a factual situation remarkably similar to the present case.  Contrary to the petitioner’s argument, the 
Henderson
 court did discuss Illinois precedent showing disfavor to such restraints.  Moreover, the legislative history to section 155.34 provides no insight into the validity of a particular antiassignability provision, since that section presumes that the assignment the court is asked to review is a valid one.  Finally, the petitioner points out that, unlike 
Henderson
, the trial court here approved the assignment.  However, we have already rejected the trial court’s determination that the petitioner was making a redesignation rather than a permanent assignment.  In fact, the trial court found that the settlement agreement did prohibit the petitioner from permanently assigning his periodic payments.

The petitioner then raises other arguments against the enforceability of the antiassignability provision of the settlement agreement.

The petitioner argues that the weight of authority disfavors contractual prohibitions of the assignment of payments to third parties unless they "explicitly" state that any attempted assignment is " 'void, or invalid or otherwise ineffective,' " citing 
Lomas Mortgage U.S.A., Inc. v. W.E. O’Neil Construction Co.
, 812 F. Supp. 841, 844 (N.D. Ill. 1993).  Contrary to the petitioner’s assertion, no "magic" word is required to render an antiassignment prohibition effective.  The antiassignment language in the case before us denies the petitioner both the power and the right to assign future payments.  See 
Lomas
, 812 F. Supp. at 844.  In 
Lomas
, the court refused to enforce the antiassignment prohibition because the provision at issue did not unambiguously prohibit or void the assignment.  It only restricted assignment by requiring the consent of the other party, and to void the assignment "is against the apparent intent of the parties and would advance no useful policy."  
Lomas
, 812 F. Supp. at 844.  In the present case, no such ambiguity exists, and, as we have previously determined, the intent of the parties was to prohibit the assignment of the periodic payments by the petitioner.

Next, the petitioner argues that courts have long held that antiassignment provisions are ineffective to prevent assignment where, as in this case, the only obligation remaining is the payment of money and the money is absolutely due to the debtor. See 
State Street Furniture Co. v. Armour & Co.
, 345 Ill. 160, 165-66 (1931); 
Ginsburg v. Bull Dog Auto Fire Insurance Ass'n
, 328 Ill. 571, 573-74 (1928); 
Village of Westville v. Loitz Brothers Construction Co.
, 165 Ill. App. 3d 338, 339-341 (1988).

More than a mere payment of money is involved in the present case.  The parties believed that the assignment of future periodic payments under the settlement agreement to anyone other than the petitioner could alter and potentially terminate the tax-preferred status of the payments, which was a part of the settlement agreement.  Therefore it is important to the parties that the payments be made in such a manner as to preserve the tax-preferred status.

The petitioner also relies on section 317 of the Restatement (Second) of Contracts (Restatement (Second) of Contracts §317 (1981)) for the proposition that, when an obligor’s duty is to pay money, a change in the person to whom the payment is to be made is ordinarily not material.  Restatement (Second) of Contracts §317, Comment (d) (1981).  However, since such a change may impact the tax treatment afforded the parties, in this case, such a change would be material.  See Restatement (Second) of Contracts §317(2) (1981); 
Piasecki
. 312 Ill. App. 3d at 874-75.

Finally, the petitioner argues that a contract term prohibiting the assignment of a contract bars only the delegation of performance of a duty or condition by the assignor.  Restatement (Second) of Contracts §322(1) (1981).  However, the petitioner owed a duty to Safeco and Sabsco not to assign the periodic payments, as such assignment may result in the loss of favorable tax treatment.

Next, the petitioner argues that, under section 9--318(4) of Article 9 of the Uniform Commercial Code (810 ILCS 5/9--318(4) (West 1998)), provisions that restrict the assignment of "money due or to become due" under a contract are ineffective and that, in any event, an annuity is not insurance.  Those same arguments were raised and rejected in 
Henderson
.  The 
Henderson
 court stated as follows:

"However, section 9--104(g) of the Commercial Code expressly excludes from article 9 'a transfer of an interest or claim in or under any policy of insurance, except as provided with respect to proceeds *** and priorities in proceeds.' [Citation.]  An 'annuity policy' is an 'insurance policy providing for monthly or periodic payments to the insured.' [Citation.]  Accordingly, article 9 does not apply to annuity policies, such as the one here.  [Citation.]"  
Henderson
, 308 Ill. App. 3d at 552.

Next, the petitioner argues that the purported tax consequences are remote and speculative and should not act as a bar to his right to assign his periodic payments.  The petitioner also argues that Safeco has waived the right to argue the tax ramifications on appeal because it has neither argued that the antiassignment language was included in the settlement agreement for its benefit as well as the petitioner’s nor cited any authority in support of that argument.  We disagree.

In its appellant’s brief, Safeco set forth how the favorable tax treatment benefitted the petitioner, Sabsco, and Safeco. Therefore, Safeco did not waive its right to argue the tax ramifications on appeal.  In any event, waiver is a limitation on the parties, not the reviewing court.  
American Federation of State, County & Municipal Employees, Council 31  v. County of Cook
, 145 Ill. 2d 475, 480 (1991).  The responsibility of a reviewing court for a just result and for the maintenance of a sound and uniform body of precedent may sometimes override the considerations of waiver that stem from the adversarial nature of our system.  
American Federation of State, County & Municipal Employees, Council 31
, 145 Ill. 2d at 480.  In light of the significance of the tax ramifications, as noted in the decisions in 
Piasecki
, 
Green
, and 
Henderson
, our consideration of the tax ramifications in this case is appropriate.

The petitioner argues that this court is neither required to nor should consider future tax consequences where, as here, such consequences are speculative.  The petitioner relies on 
Western United Life Assurance Co. v. Hayden
, 64 F.3d 833 (3d Cir. 1995). In that case, the court of appeals held that an assignment was valid and enforceable, finding no support for the proposition that the assignment would create a tax problem under section 130. 
Hayden
, 64 F.3d at 842.  However, in 
Hayden
, the issue was not whether any adverse tax consequences would result if an assignment was allowed.  After examining section 130 only to determine if the parties intended impliedly to restrict assignments in the settlement agreement, the court rejected the tax argument, concluding that it would not infer that settlement agreement was "intended" to limit assignment of the right to receive periodic payments.  Therefore, 
Hayden
 does not stand for the proposition that a party will not lose favorable tax treatment if an assignment is allowed but, rather, that the possible loss of the favorable tax treatment was not why the parties, in that case, intended to restrict the assignability of the payments.

The remainder of the petitioner’s arguments with respect to the tax implications were thoroughly addressed in 
Henderson
.  There, the court stated as follows:

"We find the antiassignment provision was a bargained-for provision that was intended to benefit all parties and, therefore, is enforceable against Henderson.  As the United States Treasury Department has recently explained:

'Congress enacted favorable tax rules intended to encourage the use of structured settlements--and conditioned such tax treatment on the injured person’s inability to accelerate, defer, increase[,] or decrease the periodic payments--because recipients of structured settlements are less likely than recipients of lump[-]sum awards to consume their awards too quickly and require public assistance.' [Citation.]

Structured settlements and the favorable tax treatment they enjoy also help guarantee predictability for insurers, which is important for transactions involving long-term liabilities. The current favorable tax treatment afforded to both annuity owners, annuity issuers, and claimants presupposes that (1) the structured settlement payments constitute tax-

free injury compensation to the recipient, and (2) the structured settlement recipient can receive the settlement payments only when they are due and cannot accelerate the payments or otherwise derive present economic benefit from payments due in the future.  [Citation.]  More important than whether or not these tax concerns are real or will actually arise is the fact that the parties implemented the antiassignment provisions with these concerns in mind.  The language of the provisions tracks the qualified assignment language of section 130(c)(2)(B) of the Internal Revenue Code.  [Citation.] Clearly, the provisions were bargained for and cannot be simply discarded or waived."  
Henderson
, 308 Ill. App. 3d at 551-52.

But see 
Powless
, 315 Ill. App. 3d at 866 (in the absence of any specific rulings

or regulations and since the Internal Revenue Code does not prohibit the assignment, adverse tax ramifications are only conjecture and speculation).

Next, the petitioner argues that Safeco has waived its right to object to the assignment because it failed to object to two earlier assignments made by the petitioner to Singer.

Waiver is the voluntary and intentional relinquishment of a known right by conduct inconsistent with an intent to enforce that right.  
Ciers v. O.L. Schmidt Barge Lines, Inc.
, 285 Ill. App. 3d 1046, 1050 (1996).  Waiver can arise either expressly or by conduct inconsistent with an intent to enforce that right.  
Ciers
, 285 Ill. App. 3d at 1050.  The party claiming an implied waiver has the burden of proving a clear, unequivocal, and decisive act of its opponent manifesting an intention to waive its rights.  
Ciers
, 285 Ill. App. 3d at 1050.  Parties to a contract have the power to waive provisions placed in the contract for their benefit, and such a waiver may be established by conduct indicating that strict compliance with the contractual provisions will not be required. 
Guice v. Sentinel Technologies, Inc.
, 294 Ill. App. 3d 97, 105 (1997).  In order to determine the applicability of waiver, one must focus on the conduct of the nonbreaching party.  
Guice
, 294 Ill. App. 3d at 105.

Prior to the instant petition, the petitioner entered into two other assignments of his payments under the settlement agreement to Singer.  In the correspondence from Singer to Safeco and Sabsco, Singer stated that it was not requiring them to recognize the assignments.  In its correspondence with the petitioner, Safeco informed the petitioner that it had changed the mailing address for his payments, but pointed out the antiassignability provisions of the settlement agreement and refused to recognize the special irrevocable power of attorney petitioner had granted to Singer. After the petition had been filed seeking approval of the two assignments, Safeco contacted the petitioner’s attorney and advised that, in light of the antiassignability language of the settlement agreement, Safeco and Sabsco opposed the request in the petition that Sabsco recognize the assignment.  After that language was deleted from the proposed order, Safeco and Sabsco stipulated to the order.

A trial court’s evidentiary finding as to whether a party has waived any rights will not be disturbed unless that decision is against the manifest weight of the evidence.  
Citizens Utilities Co. v. Centex-Winston Corp.
, 185 Ill. App. 3d 610, 613 (1989).  In this case, while the trial court determined that no waiver had occurred because it found that Safeco always had the right under the contract to object, it further found that the facts failed to show that Safeco had "absolutely" waived its rights to object to the assignment.  Although the order granting the two prior assignments provided that the petitioner "may lawfully affect the assignment of the settlement and annuity benefits," nonetheless, Safeco’s refusal to agree to recognize the prior assignments or the petitioner’s grant of an irrevocable power of attorney to Singer does not indicate a clear, unequivocal, and decisive act to waive its right to enforce the antiassignability provision of the settlement contract.  Therefore, the trial court’s finding that Safeco did not waive its right to object to the petition was not against the manifest weight of the evidence.

Finally, the petitioner argues that, in effect, Safeco is seeking injunctive relief in that Safeco is seeking to permanently enjoin the petitioner from assigning his payments to Singer or any other such company on the basis that such an assignment would constitute a breach of contract.  The petitioner further argues that Safeco has waived its right to argue that it was not seeking an injunction because it failed to challenge the trial court’s holding that Safeco had an adequate remedy at law in the event it experienced a loss as a result of the petitioner’s assignment of his payments.  For the reasons stated above, we will not invoke the waiver rule against Safeco.  Furthermore, we disagree with the petitioner’s substantive argument.

Our supreme court has described an injunction as a " 'judicial process, by which a party is required to do a particular thing, or to refrain from doing a particular thing, according to the exigency of the writ, the most common sort of which operate as a restraint upon the party in the exercise of his real or supposed rights.' [Citation.]"  
In re A Minor
, 127 Ill. 2d 247, 261 (1989).  However, had Safeco prevailed in the trial court, pursuant to section 155.34, the only action the trial court would have taken would be to deny the defendant’s petition for approval of the assignment, not bar him from making any assignments.  While the order in this case includes an admonishment to the petitioner that he could not enter into any more assignments without court approval, that admonishment merely mirrors the requirements of section 155.34.

Clearly, the only thing sought by Safeco in its objection to the petition in this case is the enforcement of the antiassignment provision contained in the structured settlement agreement.  There is nothing in the record that suggests that Safeco was seeking an order permanently enjoining the petitioner from assigning his payments.  Safeco only sought denial of the petition seeking approval of the assignment.  Therefore, we reject the petitioner’s argument that Safeco sought injunctive relief in this case.

In summary, we conclude that the terms of the structured settlement agreement, which were agreed to by the petitioner, prohibited the petitioner from assigning his periodic payments. While not favored in the law, there is no public policy against the enforceability of antiassignment provisions in Illinois.  Therefore, it was the duty of the trial court to enforce the terms of the structured settlement agreement including the antiassignability provision as agreed to by the parties.

Based upon all of the foregoing, we reverse the order of the trial court approving the assignment of future payments from the petitioner to Singer.  Because the structured settlement agreement in this case contained an enforceable antiassignment provision, section 155.34 does not apply to the petition in this case. Therefore, we remand the cause to the trial court for the entry of an order dismissing the defendant’s petition.

The judgment of the circuit court of Du Page County is reversed, and the cause is remanded for the entry of an order dismissing the petition.

Judgment reversed; cause remanded with instructions.

BOWMAN, P.J., and GEIGER, J., concur.