SECOND DIVISION

                                      Date Filed: June 21, 2005

No. 1-04-2818

R AND B KAPITAL DEVELOPMENT, LLC,) Appeal from the

an Illinois limited liability    ) Circuit Court of    

company,                         ) Cook County.

                                 )

      Plaintiff-Appellant,       )

                                 )

      v.                         ) No. 03 L 8355

                                 )

NORTH SHORE COMMUNITY BANK AND   )

TRUST COMPANY and CHICAGO TITLE  ) Honorable

AND TRUST COMPANY,               ) James F. Henry,

                                 ) Judge Presiding.

      Defendants-Appellees.      )

     JUSTICE HALL delivered the opinion of the court: 

     The plaintiff, R&B Kapital Development LLC, appeals from orders of the circuit court of Cook County dismissing its amended complaint for negligent misrepresentation, breach of fiduciary duty and breach of contract against the defendants, North Shore Community Bank and Trust Company (North Shore) and Chicago Title and Trust Company (Chicago Title).  On appeal, the plaintiff raises the following issues: (1) whether the Credit Agreements Act (the Act) (815 ILCS 160/0.01 
et
 
seq.
 (West 2004)) bars counts I and II of the amended complaint; (2)  whether the amended complaint alleged sufficient facts to support causes of action for negligent misrepresentation and breach of fiduciary duty; and (3) whether waiver and estoppel defenses bar the plaintiff's cause of action for breach of the escrow agreement.  The pertinent factual allegations of the amended complaint are set forth below.

     In the fall of 2000, Robert Beevers, the plaintiff's agent, applied for a construction loan at North Shore for the renovation of property owned by the plaintiff.  Mr. Beevers dealt with Ann Tyler, the loan administration officer, and Lauretta Burke, senior vice-president of North Shore.  During the processing of the loan, Mr. Beevers apprised North Shore of the plaintiff's prior bad experiences in its dealings with construction companies and construction financing.  Either or both Ms. Tyler and Ms. Burke represented to Mr. Beevers that North Shore was experienced in construction financing and would assist the plaintiff in setting up a secure procedure.  North Shore prepared a construction loan escrow trust and disbursing agreement (the escrow agreement).  The escrow agreement provided that Chicago Title would act as the disbursing agent for the construction and related development costs.  The plaintiff and North Shore executed the escrow agreement on October 16, 2000.  

     On December 6, 2000, based on the representations of North Shore and its officers, the plaintiff executed the loan documents, which included a disbursement request and authorization.  The disbursement request authorized $981,505 in loan funds to be issued to Chicago Title to fund the escrow.  At the time of the closing of the loan, North Shore paid four subcontractors, all of whom had been hired by the plaintiff's previous general contractor.  Ms. Tyler collected and inspected the subcontractors' lien waivers and authorized payment to them.  The plaintiff's new general contractor, Tenant Improvements, was also paid for work to date, leaving a balance of $581,109.25 in the escrow.    

     Ms. Tyler established a procedure for the construction draws against the escrow.  North Shore would fill out an "Owners Payment Authorization," a "Sworn Owner's Statement to Chicago Title Insurance Company" and a "Certificate of Completion."  Ms. Tyler would fax the documents to Mr. Beevers to verify that the work identified on the documents was complete and, if so, he was to execute the documents on behalf of the plaintiff.  Under this procedure, payments from the escrow were made to Tenant Improvements, $150,000; Edwards Engineering, Inc., $143,000; and another $215,000 to Tenant Improvements.  While the work had been completed, Mr. Beevers had no way of knowing that the subcontractors were not listed for payment and were not going to be paid; he relied on Ms. Tyler's representations that the proper construction loan procedure had been established.  

     At the time of each construction draw, Ms. Tyler dealt with James Sugrue, president of Tenant Improvements, but she failed to ascertain which subcontractors were being paid from the draws and failed to request or examine any lien waivers.  Neither defendant provided the plaintiff with a sworn statement by the general contractor setting forth the names, addresses of and the amounts due to the subcontractors hired by Tenant Improvements, even though both defendants were aware that there were subcontractors hired by Tenant Improvements working on the project.  The balance of the escrow was paid to Edwards Engineering.  

     In April 2001, Tenant Improvements stopped work on the plaintiff's property without having finished the project and then liquidated its assets for the benefit of its creditors.   Between May 2001 and January 2002, the plaintiff received notices of mechanics' liens from subcontractors hired by Tenant Improvements but who had not been paid for their work on the project.  After receiving the first of these notices, Mr. Beevers contacted Ms. Tyler, who assured him that Chicago Title was paying the subcontractors through the escrow.  An attorney for North Shore contacted Mr. Beevers and advised him that Chicago Title was at fault for failing to pay the subcontractors directly.  The outstanding mechanics' liens totaled $708,783.54.    

     Counts I and II of the amended complaint were directed against North Shore.  Count I alleged negligent misrepresentation in that North Shore, through its agents Ms. Tyler and/or Ms. Burke: 

"falsely represented that it would:

     a. Use a construction escrow to ensure that loan disbursements would be properly made to pay for materials and supplies,

     b. Process escrow payments to make sure that the subcontractors received payments for their work, and

     c. Otherwise act professionally and responsibly to assist plaintiff in applying the construction loan proceeds to the proper recipients upon the proper paperwork."

Count II alleged a breach of fiduciary duty in that, based on the representations of Ms. Tyler and Ms. Burke, the plaintiff placed its faith and trust in them and followed their recommendations for disbursement of the loan proceeds.  

     Count III was directed at Chicago Title and alleged that the escrow agreement required Chicago Title to review the necessary documentation to make proper disbursements and specifically required Chicago Title to disburse the funds to the subcontractors.  It further alleged that Chicago Title breached the escrow agreement when it disbursed a total of $537,030.25 to Tenant Improvements, the general contractor.  

     North Shore filed a motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2004)).  In its motion, North Shore maintained that it was entitled to judgment on the pleadings (735 ILCS 5/2-615(e) (West 2004)) and dismissal of the complaint pursuant to sections 2-619(a)(7) and (a)(9) of the Code (735 ILCS 5/2-619(a)(7), (a)(9) (West 2004)).  North Shore argued that the amended complaint was barred under the Act (815 ILCS 160/0.01 
et
 
seq.
 (West 2004)) and that the allegations of the amended complaint failed to state a cause of action for negligent misrepresentation or for breach of fiduciary duty. 

     Chicago Title filed a motion to dismiss count III of the amended complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2004)).  Chicago Title argued that count III should be dismissed because the plaintiff authorized it to disburse funds to Tenant Improvements. 

     The court denied North Shore's motion for judgment on the pleadings but granted its motion to dismiss pursuant to section 2-619.  Subsequently, the circuit court granted Chicago Title's motion to dismiss pursuant to section 2-615.  The plaintiff filed a timely notice of appeal from both orders.  

ANALYSIS 

I. Credit Agreements Act

     The plaintiff contends that the Act does not bar counts I and II of the amended complaint because the escrow agreement is not a credit agreement as defined by the Act.  The issue of whether an escrow agreement is a credit agreement under the Act has not previously been addressed by our Illinois courts.

A. Standard of Review

     The construction of a statute is a question of law for which the standard of review is 
de
 
novo
.  See 
Quad Cities Open, Inc. v. City of Silvis
, 208 Ill. 2d 498, 508, 804 N.E.2d 499 (2004).

B. Discussion

     Section 2 of the Act states as follows:

     "A debtor may not maintain an action on or in any way related to a credit agreement unless the credit agreement is in writing, expresses an agreement or commitment to lend money or extend credit or delay or forbear repayment of money, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor."  815 ILCS 160/2 (West 2004).

     Under the Act, a credit agreement means "an agreement or commitment by a creditor to lend money or extend credit or delay or forbear repayment of money not primarily for personal, family or household purposes, and not in connection with the issuance of credit cards."  815 ILCS 160/1(1) (West 2004).  

     In construing the meaning of a statute, the primary objective of the court is to ascertain and give effect to the intention of the legislature.  
In re Detention of Lieberman
, 201 Ill. 2d 300, 307, 776 N.E.2d 218 (2002).  The court's inquiry must always begin with the language of the statute, which is the surest and most reliable indicator of legislative intent.  
Revolution Portfolio, LLC v. Beale
, 332 Ill. App. 3d 595, 603, 774 N.E.2d 14 (2002).  The language of a statute must be given its plain and ordinary meaning, and where the statutory language is clear and unambiguous, the court has no occasion to resort to aids of construction.  
Beale
, 332 Ill. App. 3d at 603.  

     Beginning with 
First National Bank in Staunton v. McBride Chevrolet, Inc.
, 267 Ill. App. 3d 367, 642 N.E.2d 138 (1994), Illinois courts have relied on the broad language of the Act in determining whether a credit agreement was entered into by the parties.  In 
McBride Chevrolet, Inc.
, the reviewing court found that a bank officer's promise to hold a check overnight was a credit agreement under the Act and held that the Act barred the defendants' counterclaim for tortious interference with a business relationship based on the bank's failure to honor its promise to hold the check.  The court rejected the defendants' arguments that the promise was not a credit agreement under the Act and that the counterclaim was not barred by the statute of frauds, stating as follows:

"The Act, however, is broadly worded.  It bars actions by a debtor 'on or in any way related to a credit agreement' unless there is a written agreement. [Citation.]  There is no limitation as to the type of actions by a debtor which are barred by the Act, so long as the action is in any way related to a credit agreement.  This is in contrast to the language of section 1 of the Frauds Act, which bars actions 
upon
 certain agreements which are not in writing. [Citation.]  The language of the Act bars all actions by a debtor based on, or related to, an oral credit agreement.  *** Therefore, all actions which depend for their existence upon an oral credit agreement are barred by the Act."  (Emphasis in original.)  
McBride Chevrolet, Inc.
, 267 Ill. App. 3d at 372.

     In 
McAloon v. Northwest Bancorp, Inc.
, 274 Ill. App. 3d 758, 654 N.E.2d 1091 (1995), the reviewing court found the Act barred the plaintiff's actions for breach of contract, common law fraud and misrepresentation.  The suit was based on the defendant's breach of an oral agreement to lend funds.  The court held that the Act barred traditional exceptions to the Frauds Act.  The court agreed with 
McBride Chevrolet, Inc.
, that "enforcing the Act as written causes harsh results for bank customers in some circumstances, but the Act is very broadly worded and dictates such a result."  
McAloon
, 274 Ill. App. 3d at 765; see also 
Klem v. First National Bank of Chicago
, 275 Ill. App. 3d 64, 655 N.E.2d 1211 (1995) (Act barred former employee's oral agreement with former employer to provide credit for new venture);
 
Teachers Insurance & Annuity Ass'n of America v. LaSalle National Bank
, 295 Ill. App. 3d 61, 691 N.E.2d 881 (1998) (rejecting cases that construed Minnesota's similar statute to permit borrowers to assert counterclaims and affirmative defenses based on credit agreements in lender suits).

    In 
Bank One, Springfield v. Roscetti
, 309 Ill. App. 3d 1048, 723 N.E.2d 755 (1999), the reviewing court reversed the circuit court's finding that the Act did not apply to a loan guaranty.  Analyzing the state and federal cases construing the Act, the reviewing court observed that a "credit agreement often consists of several documents that, together, create the terms of the extension of credit.  The documents are, in many instances, conditioned upon each other, and a default under one is usually a default under all.  Significantly, the Act does not limit the definition of 'credit agreement' to being a single document."  
Roscetti
, 309 Ill. App. 3d at 1058.  The court found that, since the guaranty was a condition precedent to the loan and without it there would have been no credit agreement at all, the guaranty, together with the note, the floor plan, and possibly other documents, constituted the comprehensive credit agreement.  Moreover, the guaranty contained an integration claim that integrated it with any "'related documents.'"  
Roscetti
, 309 Ill. App. 3d at 1058.

    In 
Nordstrom v. Wauconda National Bank
, 282 Ill. App. 3d 142, 145, 668 N.E.2d 586 (1996), the reviewing court addressed the issue in a context similar to the case before us.  The court determined that while an agreement to obtain insurance was not, itself, a credit agreement, the requirement of insurance for the collateral was an integral part of the credit agreement.  The plaintiff could not maintain an action alleging promissory estoppel or breach of contract based on the promise of the mortgagee's agent to provide the insurance because the oral modification agreement was related to the credit agreement, and the claims predicated on it were barred by the Act.  
Nordstrom
, 282 Ill. App. 3d at 145-46.

     Similarly, in this case, the escrow agreement was an integral part of the construction loan.  Article 2, section A, of the escrow agreement set forth that the plaintiff had placed a mortgage on the property and that for the benefit of North Shore and the plaintiff, Chicago Title "has been requested to provide a disbursing service as a means to pay for construction and related development costs."  
The plaintiff's mortgage with North Shore provides in pertinent part as follows:

     "
Related Documents.  
The words 'Related Documents' mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and 
all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness.
"  (Emphasis added.)   

The loan documents also included a disbursement request and authorization to disburse funds to the plaintiff "via CHICAGO TITLE" in the amount of $981,505.  There is no dispute that the sum was to fund the construction escrow.  The mortgage provision and the disbursement request and authorization persuade us that the escrow agreement was an integral part of the comprehensive credit agreement the plaintiff entered into with North Shore.  Finally, although the escrow agreement was executed prior to the note and the mortgage, the use of the escrow agreement as part of the loan transaction was a direct result of the construction financing the plaintiff sought from North Shore.  

     In light of the broad language of the Act and in keeping with the line of cases thus far interpreting the Act, we determine that the plaintiff's alleged causes of action for negligent misrepresentation and breach of fiduciary duty are barred by the Act because they are based on oral statements related to a credit agreement.

     Finally, the plaintiff maintains that the existence of a credit agreement between the parties does not insulate lenders from claims, relying on  
Davis v. Merrill Lynch Business Financial Services, Inc.
, No. O3 C 2680 (N.D. Ill. February 13, 2004).  The plaintiff's reliance is misplaced.  In holding that certain claims were not barred by the Act, the district court noted that those claims were not premised on oral statements by the defendant.  

     We conclude that counts I and II of the amended complaint are barred by the Act, and therefore, the circuit court did not err in dismissing those counts.  In light of our determination, we need not address whether the plaintiff's complaint states a cause of action for negligent misrepresentation or breach of fiduciary duty.  

II. 
Breach
 
of
 
Contract
 
By
 
Chicago
 
Title

A. Standard of Review

     The granting of a motion to dismiss a complaint pursuant to section 2-615 of the Code is reviewed 
de
 
novo
.  
Carroll v. Faust
, 311 Ill. App. 3d 679, 684, 725 N.E.2d 764 (2000).

B. Discussion 

     "When the legal sufficiency of a complaint is challenged by a section 2-615 motion to dismiss, all well-pleaded facts alleged in the complaint are taken as true."  
Carroll
, 311 Ill. App. 3d at 684.  "On review of a section 2-615 dismissal, the reviewing court must determine whether the allegations of the complaint, when interpreted in a light most favorable to the plaintiff, sufficiently set forth a cause of action on which relief may be granted."  
Carroll
, 311 Ill. App. 3d at 684.  "The motion should be granted only if the plaintiff can prove no set of facts to support the cause of action asserted."  
Carroll
, 311 Ill. App. 3d at 684.  "This process does not require the reviewing court to weigh findings of fact or determine credibility, and, as such, it is not required to defer to the trial court's judgment."  
Carroll
, 311 Ill. App. 3d at 684.  

     The escrow agreement provided in pertinent part as follows:

     "The parties hereto (North Shore and the plaintiff) agree that Escrow Trustee (Chicago Title) will disburse Trust deposits made for construction payment to subcontractors.  In the event that the General Contractor and any subcontractor jointly authorize the Escrow Trustee to pay any funds due one to the other, the Escrow Trustee may comply with such authorization." 

The escrow agreement named Tenant Improvements as the "general contractor."  The escrow agreement further provided that, prior to the initial disbursement of funds, the plaintiff was required to furnish North Shore and Chicago Title with:

     "a Sworn Owner's Statement disclosing the various contracts entered into by the Owner/Borrower relating to the construction of the Project and setting forth the names of the contractors, their addresses, the kind of service, work or materials to be furnished, the amounts of such contracts, the amounts paid to date, if any, the amounts of current payments, if any, and the balances to become due, if any"

and

     "a sworn statement to the Owner by the General Contractor setting forth the names and addresses of such persons furnishing labor, service or materials (i.e. subtrades and material suppliers), the kind of labor, service or materials to be furnished, the amounts of the contracts, amounts paid to date, if any, amounts of current payments, if any, and balances to become due if any." 

     Thereafter, for disbursements from the escrow, the plaintiff was required to furnish Chicago Title with the following: (1) a current dated sworn owner's statement; (2) a current dated sworn statement to owner by contractor; (3) sufficient funds to cover the requested disbursement; (4) written approval by the plaintiff of the current construction draw; (5) certification that the work had been completed; and (6) "[s]tatements, waivers, affidavits, supporting waivers, and releases of lien from such persons" for the purposes of extending title insurance. 

     In its motion to dismiss, Chicago Title argued that the plaintiff had waived the contractual provision requiring it to pay only subcontractors by specifically directing Chicago Title to pay Tenant Improvements.  Chicago argued further that, because it relied on the plaintiff's direction to pay Tenant Improvements,  the plaintiff was estopped from asserting any claim against Chicago Title based on those payments.  

     Waiver and equitable estoppel are affirmative defenses and under Illinois law must be affirmatively pled or they are waived.  
Hubble v. O'Connor
, 291 Ill. App. 3d 974, 684 N.E.2d 816 (1997).  In this case, Chicago Title did not raise these defenses in an answer but used them as the basis of its section 2-615 motion to dismiss.  An affirmative defense is properly asserted in a section 2-615 motion only if the defense is apparent from the face of the complaint.  
Advocate Health & Hospitals Corp. v. Bank One, N.A.
, 348 Ill. App. 3d 755, 810 N.E.2d 500 (2004); 
Senese v. Climatemp, Inc.
, 222 Ill. App. 3d 302, 582 N.E.2d 1180 (1991) (
laches
 properly raised in section 2-615 motion where an unreasonable delay appeared on the face of the complaint and the plaintiff failed to explain the delay).

     The amended complaint alleged that Chicago Title breached the escrow agreement when it issued $537,030.25 in disbursements from the escrow directly to the general contractor, Tenant Improvements, by failing to review the contractor's affidavits and failing to request subcontractor waiver of liens at the time of disbursing the funds to Tenant Improvements.  The amended complaint further alleged that Chicago Title knew or should have know that Tenant Improvements was not the sole contractor on the project, that subcontractors would have to be retained, and materials supplies had to be furnished by other companies.  The escrow agreement was attached as an exhibit.  Also attached as exhibits were sworn owner's statements and owner's authorizations signed by Mr. Beevers on behalf of the plaintiff authorizing payments to Tenant Improvements.  

     Chicago Title argues that the plaintiff's authorizations, via Mr. Beevers, of the payments to Tenant Improvements, contained in the exhibits to the amended complaint, were a clear manifestation of its intention to waive the requirements of the escrow agreement.  Exhibits attached to the complaint become a part of the complaint and will also be considered.  
Brock v. Anderson Road Ass'n
, 287 Ill. App. 3d 16, 21, 677 N.E.2d 985 (1997) (abrogation on other grounds recognized in 
Albers v. Breen
, 346 Ill. App. 3d 799, 806 N.E.2d 667 (2004)).  An exhibit attached to a complaint controls, and a motion to dismiss does not admit allegations of the complaint if such allegations are in conflict with the facts disclosed in the exhibit.  
Brock
, 287 Ill. App. 3d at 21.  

     Waiver is the voluntary and intentional relinquishment of a known right inconsistent with an intent to enforce that right.  
In re Nitz
, 317 Ill. App. 3d 119, 130, 739 N.E.2d 93 (2000).  "Parties to a contract have the power to waive provisions placed in the contract for their benefit, and such a waiver may be established by conduct indicating that strict compliance with the contractual provisions will not be required."  
Nitz
, 317 Ill. App. 3d at 130.  "The party claiming the implied waiver has the burden of proving a clear, unequivocal, and decisive act of its opponent  manifesting an intention to waive its rights."  
Nitz
, 317 Ill. App. 3d at 130.  

     The doctrine of equitable estoppel prevents a party from asserting a right it would otherwise be able to assert.  
Hubble
, 291 Ill. App. 3d at 986.  In order to establish equitable estoppel, the party must show that it was led to detrimentally rely upon the conduct or statements of the opposing party and that such reliance was in good faith.  
Hubble
, 291 Ill. App. 3d at 986-87.  It is established that "'"[a] party claiming the benefit of an estoppel cannot shut his eyes to obvious facts, or neglect to seek information that is easily accessible, and then charge his ignorance to others."'"  
Hubble
, 291 Ill. App. 3d at 987, quoting 
Vaughan v. Speaker
, 126 Ill. 2d 150, 169, 533 N.E.2d 885 (1988) (Ryan, J., specially concurring), quoting 
Vail v. Northwestern Mutual Life Insurance Co.
, 192 Ill. 567, 570, 61 N.E. 651 (1901).  Thus, to benefit from equitable estoppel, the party claiming it must have "'had no knowledge or means of knowing the true facts."  
Hubble
, 291 Ill. App. 3d at 987, quoting 
Lissner v. Michael Reese Hospital & Medical Center
, 182 Ill. App. 3d 196, 207, 537 N.E.2d 1002 (1989). 

     Article 3(B)(2) of the escrow agreement provided that before Chicago Title could disburse funds from the escrow, the plaintiff was required to furnish it, 
inter
 
alia
 with a "current dated Sworn Statement to Owner by the General Contractor."  This document would have listed the subcontractors and the material suppliers.  The amended complaint alleged the documents plaintiff was to furnish to Chicago Title were prepared by North Shore and faxed to Mr. Beevers for signature.  From the allegations in the amended complaint, a sworn statement to owner by general contractor was never sent to Mr. Beevers for signature. 

     "In order to determine the applicability of waiver, one must focus on the conduct of the nonbreaching party."  
Nitz
, 317 Ill. App. 3d at 130.  The plaintiff does not dispute that it approved at least two draws to be paid to Tenant Improvements.  However, according to the facts alleged in the amended complaint, Chicago Title disbursed funds from the escrow fund without questioning the plaintiff or North Shore as to the absence of a sworn statement by the general contractor to the owner setting forth the names, addresses and amounts due the subcontractors hired by Tenant Improvements.

The facts in the amended complaint and the exhibits do not establish that the plaintiff clearly intended to waive any of the requirements of the escrow agreement.  Since the affirmative defenses of waiver and estoppel do not appear on the face of the complaint, the circuit court erred when it granted Chicago Title's section 2-615 motion to dismiss. 

     In the alternative, Chicago Title argues that the amended complaint fails to allege a breach of the escrow agreement and that Chicago Title had no duty to provide lien waivers.  However, the amended complaint alleged that Chicago Title breached the escrow agreement when it "wrongfully issued disbursements from the trust account directly to the general contractor."  This allegation is supported by the exhibits attached to the complaint showing that Chicago Title paid the general contractor and  disbursed funds in the absence of the sworn statement by the general contractor to the owner.  Therefore, the circuit court erred when it granted Chicago Title's section 2-615 motion to dismiss.

     We affirm the order dismissing counts I and II of the amended complaint.  We reverse the order dismissing count III of the amended complaint and remand the cause for further proceedings.

     Affirmed in part and reversed and remanded in part.

     BURKE, P.J., and WOLFSON, J., concur.