No. 2--05--0689                                      filed: 6/8/06

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| In re MARY FOREMAN, | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| Seller | ) | |
| | ) | No. 04--CH--943 |
| (Rapid Settlements, Ltd., Petitioner- | ) | |
| Appellee and Cross-Appellant, v. | ) | |
| Symetra Life Insurance Company and | ) | Honorable |
| Symetra Assigned Benefits Service | ) | Janet R. Holmgren, |
| Company, Respondents-Appellants and | ) | Judge, Presiding. |
| Cross-Appellees). | | |

_____

JUSTICE BYRNE delivered the opinion of the court:

This appeal arose from the petition, filed by petitioner, Rapid Settlements, Ltd., pursuant to the Structured Settlement Protection Act (Act) (215 ILCS 153/1 et seq. (West 2004)), for court approval of a transfer of a portion of Mary Foreman's structured settlement payment rights. Respondents, Symetra Life Insurance Company and Symetra Assigned Benefits Service Company (Symetra, collectively), the annuity issuer and the structured settlement obligor, respectively, filed an objection to the petition for approval. The trial court approved the transfer but struck from the transfer agreement paragraph 10, which had granted Rapid Settlements a right of first refusal on any future transfers of the remaining periodic payments not otherwise transferred by Foreman. On appeal, Symetra contends that the trial court erred in approving the transfer. Rapid Settlements cross-

appeals and argues that the trial court erred by striking paragraph 10 from the transfer agreement. We reverse the trial court's judgment approving the transfer. Because we reverse, we need not address the cross-appeal.

BACKGROUND

The structured settlement at issue derives from a settlement agreement and release entered into on or about February 8, 1996, between Foreman, administrator of the estate of Dashawna Foreman, and Illinois State Medical Insurance Services, Inc., as insurer for and on behalf of Warren Babcock, Jr., M.D., for the purpose of settling a wrongful death action in the circuit court of Winnebago County. The settlement agreement provides that Foreman was to receive $121,445 at the time of settlement, and the following future periodic payments: $1,000 per month, "beginning on December 1, 1996[,] through June 1, 2005, all 103 payments being guaranteed certain," and $789 per month, "beginning on July 1, 2005, guaranteed for 10 years certain, increasing at 3% annually, and payable thereafter for the life of Mary Foreman." The settlement agreement further provides that "[Foreman] acknowledges that the Periodic Payments described in Section 2 cannot be accelerated, deferred, increased or decreased by [her]; nor shall [she] have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise." The settlement agreement also states that it "shall be construed and interpreted in accordance with the law of the State of Illinois."

In order to fulfill and discharge its obligation to make the periodic payments to Foreman under the settlement agreement, the insurer made a qualified assignment of its liability to make the periodic payments, to Safeco Assigned Benefits Service Company, n/k/a Symetra Assigned Benefits Service Company. In order to fulfill its obligations to

Foreman under the structured settlement, Safeco purchased an annuity from Safeco Life Insurance Company, n/k/a Symetra Life Insurance Company, naming Foreman as annuitant. Under this annuity, Symetra Life makes the periodic payments required under the structured settlement agreement directly to Foreman, although Symetra Assigned Benefits Service is still obligated to make the periodic payments should Symetra Life fail to do so.

Foreman contacted Rapid Settlements, seeking to transfer a portion of her structured settlement payment rights for a lump-sum payment. On August 9, 2004, Foreman executed an amended transfer agreement under which she agreed to transfer to Rapid Settlements, its successors and/or assigns, the assigned payments in exchange for a lump-sum payment of $10,500.

On September 10, 2004, Rapid Settlements filed in the circuit court of Winnebago County a petition for approval of the transfer of the structured settlement payment rights. Subject to the trial court's approval, Foreman agreed to transfer to Rapid Settlements, its successors and/or assigns, the following periodic payments: "Six (6) monthly payments each in the amount of $942.11 beginning on January 1, 2012[,] through and including June 1, 2012; and Thirty-Six (36) monthly payments each in the amount of $970.37, both sets of payments subject to a 3% annual increase each July 1st, beginning on July 1, 2012[,] through and including June 1, 2015, ultimately increasing to $1,029,47 per month." Foreman signed a written waiver indicating that she chose to waive seeking independent professional advice regarding the financial, legal, and tax implications of the transfer. All interested parties received a notice and a copy of the petition for approval.

On October 12, 2004, Symetra filed an objection to the petition. Symetra argued that the transfer would place unacceptable burdens upon it. Symetra also argued that the transfer failed to comply with the provisions of the Act. Of relevance to this appeal, Symetra contended that under the Act a proposed transfer of settlement rights is not authorized if it would contravene any law. See 215 ILCS 153/30(e) (West 2004). Symetra argued that the proposed transfer would contravene Illinois contract law because the antiassignment clause of the settlement agreement expressly prohibits Foreman from entering into a transfer agreement such as the one with Rapid Settlements.

On October 21, 2004, the court issued a memorandum of decision holding that the transfer agreement was enforceable and complied with the Act and other applicable law in all respects, with the exception of paragraph 10 concerning the right of first refusal. Accordingly, the court severed paragraph 10 from the transfer agreement. As to the enforceability of the antiassignment clause in the structured settlement agreement, the court first noted that it was cognizant that such clauses are looked upon with disfavor and should be narrowly interpreted. Next, relying on a rule cited in In re Nitz, 317 Ill. App. 3d 119, 127 (2000), that antiassignment provisions are ineffective to prevent assignment where the payment of money is the only obligation remaining and the money is absolutely due to the debtor, the trial court believed that "[t]he [antiassignment] clause in Nitz was enforced because a change in the recipient of the payment should have altered the favorable tax treatment afforded the parties." The trial court distinguished Nitz on the basis that the tax treatment of a transfer was no longer an issue in the present case. Accordingly, the trial court did not enforce the antiassignment clause and approved the transfer.

On February 25, 2005, the trial court denied Symetra's motion for reconsideration. An order was thereafter entered on June 22, 2005, approving the transfer of the structured settlement payment rights from Foreman to Rapid Settlements but striking paragraph 10 of the transfer agreement regarding the right of first refusal. Symetra timely appealed. Rapid Settlements timely cross-appealed.

ANALYSIS

In support of its first contention, that the trial court erred in approving the transfer, Symetra asserts that the assignment of the structured settlement payment rights is prohibited by the unambiguous terms of the underlying settlement agreement, as well as by the qualified assignment and annuity contracts. We agree.

"Construing the language of a contract is a question of law, and we review a trial court's determination of a contract de novo." Nitz, 317 Ill. App. 3d at 124; Henderson v. Roadway Express, 308 Ill. App. 3d 546, 548 (1999). "When construing a contract, our duty is to effectuate the intent of the parties to the contract." Henderson, 308 Ill. App. 3d at 548. "Parties to a contract are free to include any terms they choose, as long as those terms are not against public policy and do not contravene some positive rule of law." Green v. Safeco Life Insurance Co., 312 Ill. App. 3d 577, 581 (2000). "Such a contract is binding on both parties, and it is the duty of the court to construe it and enforce the contract as made." Green, 312 Ill. App. 3d at 581.

The parties do not dispute that the structured settlement agreement in this case contains an antiassignment provision. The plain language of the settlement agreement prohibits all assignments. Paragraph 3 of the settlement agreement specifically states that Foreman does not have "the power to sell, mortgage, encumber, or anticipate the

[payments], or any part thereof, <u>by assignment or otherwise</u>."   (Emphasis added.) Moreover, similar to the settlement agreement, the qualified assignment and annuity contracts prohibit assignments of the periodic payments.  The qualified assignment contract provides that none of the payments "may be accelerated, deferred, increased or decreased and may not be anticipated, sold, assigned or encumbered."  The annuity contract similarly provides that no payment "may be accelerated, deferred, increased, or decreased, or anticipated, sold, assigned, or encumbered in any manner by the annuitant (or either joint annuitant) or any other recipient of the payment."

However, relying on <u>Nitz</u>, the trial court did not enforce the antiassignment clause of the settlement agreement, determining that the antiassignment provision was ineffective to prevent assignment because the payment of money was the only obligation remaining and the tax treatment was immaterial.  Rapid Settlements adds in support that restraints on alienation, as found in the settlement agreement and the qualified assignment and annuity contracts, were included to preserve the tax-exempt character of the transaction.  Rapid Settlements asserts that because that status is not protected by federal and Illinois law, the trial court correctly ignored the antiassignment provision.  We disagree for the following reasons.

First, the trial court incorrectly concluded that we enforced the antiassignment clause in <u>Nitz</u> solely because the transfer of payments could have altered the parties' favorable tax treatment.  A review of <u>Nitz</u> as well as other decisions addressing antiassignment provisions shows that the language of the agreements between the parties was the main basis for enforcing the provisions.

Nitz entered into an agreement with Safeco to settle a negligence action. The settlement agreement gave Nitz a life annuity and expressly stated that Nitz had no power to sell, mortgage, or encumber his payments or any part thereof, by assignment or otherwise. Nitz commenced an action seeking court approval to assign the future payments in an annuity agreement. Finding that such an antiassignment provision was enforceable as there was no public policy against it, we held that Nitz's attempted assignment of future payments was invalid based on the clear and unambiguous language of the settlement agreement. Nitz, 317 Ill. App. 3d at 122, 125.

In reaching our conclusion, we relied on the Henderson and Green cases. In Henderson, the court concluded that, although Illinois law disfavored antiassignment clauses in contracts, the plain language of the settlement agreement clearly indicated that the parties intended to forbid Henderson from assigning his periodic payments. Henderson, 308 Ill. App. 3d at 549-50. The court noted that Henderson did not provide any persuasive authority to justify why it should ignore the parties' clear intentions to incorporate a bargained-for provision. Additionally, while the court noted that any adverse tax consequences, as the insurers warned of in arguing for enforcement, may or may not be real and may or may not actually arise, the important factor was that "the parties implemented the antiassignment provisions with these concerns [(favorable tax treatment)] in mind." Henderson, 308 Ill. App. 3d at 552. The court further stated that "any general policy of enabling persons to transfer property freely does not outweigh the parties' contractual intentions and the public policy of providing steady income and tax-favorable treatment to claimants of structured settlements, as evidenced by the recent passage" of the Act. Henderson, 308 Ill. App. 3d at 552. In Green, the court noted that public policy

strongly favors freedom of contract and concluded that the plain and ordinary meaning of the language of the antiassignment provision controlled. Green, 312 Ill. App. 3d at 581.

Nitz asserted that we should follow the long-held rule that antiassignment provisions are ineffective to prevent assignment where the only obligation remaining is the payment of money and the money is absolutely due to the debtor, as in that case. Nitz, 317 Ill. App. 3d at 127. We disagreed because more than the mere payment of money was involved in the case, as the parties believed that the assignment of future periodic payments to anyone other than Nitz could alter and potentially terminate the tax-preferred status of the payments. Nitz, 317 Ill. App. 3d at 127-28. Accordingly, we held that the terms of the structured settlement agreement, which were agreed to by Nitz, prohibited him from assigning his periodic payments. Nitz, 317 Ill. App. 3d at 132.

Contrary to the trial court's finding here, the tax issue was not the only basis for our decision in Nitz. The case was not resolved solely on whether any adverse tax consequences existed. We first examined the language of the settlement agreement itself and determined that the parties intended to restrict assignments, then we found an additional reason for finding the assignment void. We determined also that there were potential tax ramifications if assignment were allowed. Thus, Nitz does not stand for the proposition that if favorable tax treatment is lacking, a trial court should ignore the parties' clear intent against assignment under the language of the settlement agreement, and we will not endorse such a holding.

Rapid Settlements argues that the Victims of Terrorism Tax Relief Act of 2001 (Pub. L. No. 107--134, 115 Stat. 2427 (to be codified at 26 U.S.C. §5891(b)(2)(A) (2006))) invalidates the antiassignment provision because it eliminates an obligor's concerns about

potential tax liability when an obligee attempts to assign a structured settlement agreement. The Victims of Terrorism Tax Relief Act only specifies what tax treatment certain kinds of structured settlements will be afforded; it leaves to the individual states the question of assignability. The clear and unambiguous language of the settlement agreement controls our analysis here.

Rapid Settlements argues that the new version of the Act (215 ILCS 153/1 et seq. (West 2004)) allows Illinois courts to approve transfers of structured settlement payment rights despite antiassignment provisions in structured settlement agreements. We disagree.

In In re Shaffer, 319 Ill. App. 3d 1048 (2001), noting that there is no general rule or public policy invalidating antiassignment clauses, the court enforced a settlement agreement prohibiting assignment. With respect to Shaffer's argument that section 155.34 of the Illinois Insurance Code (215 ILCS 5/155.34 (West 2000) (now 215 ILCS 153/25 (West 2004))) applies to all settlement agreements whether they contain antiassignment provisions or not, the court disagreed. The court held that the plain language of section 155.34 does not indicate one way or another whether the section is affected by contractual antiassignment provisions or whether, when such a provision exists, the section is inapplicable, and the legislative history provides no insight into the validity of antiassignment provisions. Shaffer, 319 Ill. App. 3d at 1057. The court believed that the legislative history demonstrated that the legislature was concerned with protecting structured settlement payment recipients from unscrupulous factoring companies, that no other concern or intent was evident from the legislative discussions, and that there was no other basis for enacting section 155.34. Shaffer, 319 Ill. App. 3d at 1057-58. Similarly, we

find nothing in the current Act indicating that the legislature intended to invalidate contractual provisions against assignment.

Like the former version, the current Act does not guarantee a payee any right to transfer payments merely because the trial court finds that the elements of the Act have been satisfied.  See 215 ILCS 153/15 (1), (3) (West 2004).  "Where a structured settlement agreement does not permit the payments to be assigned, the [trial] court's authority to act on a petition seeking approval of the assignment of payments under such an agreement is not invoked ***."  Nitz, 317 Ill. App. 3d  at 123; see also Shaffer, 319 Ill. App. 3d at 1058 (although trial court has discretion under the Act to approve proposed transfer, it has that discretion only when a petitioner has a right to assign pursuant to settlement agreement). In this case, the structured settlement agreement does not permit the assignment of periodic payments, and therefore, the trial court had no authority under the Act to approve the petition.  Accordingly, because the parties intended by agreement not to assign the periodic payments, the petition for approval must be dismissed.

We also reject Rapid Settlements' application of section 322 of the Restatement (Second) of Contracts (Restatement (Second) of Contracts §322 (1981)) to the facts of this case.  Specifically, section 322, which Rapid Settlements misquotes by adding language that does not exist, provides in relevant part:

"(1) Unless the circumstances indicate the contrary, a contract term prohibiting assignment of 'the contract' bars only the delegation to an assignee of the performance by the assignor of a duty or condition.

(2) A contract term prohibiting assignment of rights under the contract, unless a different intention is manifested,

˘10˘

* * *

(c) is for the benefit of the obligor, and does not prevent the assignee

from acquiring rights against the assignor or the obligor from discharging his

duty as if there were no such prohibition."  (Emphasis added.)  Restatement

(Second) of Contracts §§322(1), (2)(c) (1981).

Section 322(1) limits contract terms that prohibit assignment of the contract as a whole by

restricting the prohibition against assignment only to performance of specific duties or

conditions under the contract, and only in cases in which the circumstances do not "indicate

the contrary."  In this case, the antiassignment provision is very specific as it expressly

prohibits the payee's right to assign the payments.  Section 322(2)(c) does not restrict

enforcement of antiassignment provisions in those cases where the parties' intentions to

enforce the provisions are manifest.

Furthermore, the antiassignment provision of the settlement agreement benefits

Foreman by assuring her of a continuing cushion of income, preventing her from "binging

away" the asset and effectively becoming indigent.  See Nitz, 317 Ill. App. 3d at 123

("legislature was concerned that such persons were accepting offers of ready, but deeply

discounted, cash from companies in exchange for their settlement annuity payments and

then ending up penniless and without resources in the future"); J.G. Wentworth S.S.C. Ltd.

Partnership v. Callahan, 256 Wis. 2d 807, 817, 649 N.W.2d 694, 699 (App. 2002), citing

Wentworth v. Jones, 28 S.W.3d 309, 313 (Ky. App. 2000).  The antiassignment provision

also benefits Symetra by guarding against administrative risks and burdens, the potential

for multiple liability, and the loss of predictability.  It protects Symetra Life from the need to

deal with individuals other than those named in the policy and from the risk of "determining

at its peril which of several claimants may be entitled to the fund. Especially *** in cases providing for regular periodical payments." Hoffman v. Hoffman, 8 N.J. 157, 161, 84 A.2d 441, 442 (1951); see also Nitz, 317 Ill. App. 3d at 122 (acknowledging the "burdensome administrative problems" and "increased legal and administrative expenses" the insurer stated it would face if the court approved the transfer); Henderson, 308 Ill. App. 3d at 552 (structured settlements help guarantee predictability for insurers, which is important for transactions involving long-term liabilities); Singer Asset Finance Co. v. CGU Life Insurance Co. of America, 275 Ga. 328, 331, 567 S.E.2d 9, 11 (2002) (enforcing an antiassignment provision and noting that "the assignment of a structured settlement agreement exposes the obligor to potential litigation and administrative risks"). Accordingly, we find that the clear and unambiguous language of the settlement agreement prohibiting assignment, of any kind and for any duration, of the periodic payments, to which the parties agreed, should be given full effect.

In passing, we observe that by our holding we may be enforcing a transaction that will place Foreman in significantly greater financial need today. However, Foreman freely made the agreement that she seeks to avoid now. Absent a violation of public policy, we will not approve the voiding of unambiguous, bargained-for contract terms.

Based upon the foregoing, because the structured settlement agreement in this case contained an enforceable antiassignment provision, the Act does not apply and the petition must be dismissed. We therefore reverse the order of the trial court and remand the cause to the trial court for the entry of an order dismissing Rapid Settlements' petition. Further, based on our decision, we need not address Symetra's argument that the proposed transfer was not an effective transfer under the provisions of the Act or address Rapid

Settlements' cross-appeal that the trial court erred in striking paragraph 10 of the transfer agreement regarding Rapid Settlements' right of first refusal.

The judgment of the circuit court of Winnebago County is reversed, and the cause is remanded for the entry of an order dismissing the petition.

Reversed and remanded with instructions.

BOWMAN and HUTCHINSON, JJ., concur.