IN RE Esperanza HUGHES

No. 04-15-00482-CV

Court of Appeals of Texas, San Antonio.

Delivered and Filed: August 10, 2016

Mathis Beckham Bishop, Martin & Drought, P.C., San Antonio, TX, David Walsh, Walsh Law Firm, Corpus Christi, TX, for Appellant.

Earl S. Nesbitt, David Sloan Vassar, Patrick Sicotte, Nesbitt, Vassar & McCown, L.L.P., Addison, TX, Esperanza Hughes, Alice, TX, for Appellee.

Steven R. Harris, Drinker Biddle and Reath, Philadelphia, PA, for Metropolitan Life.

Sitting: Karen Angelini, Justice, Patricia O. Alvarez, Justice, Jason Pulliam, Justice

## OPINION

Opinion by: Karen Angelini, Justice

Interested parties Metropolitan Life Insurance Company and Metropolitan Tower Resources Group, Inc. (collectively, "MetLife") appeal the trial court's order granting Peachtree Settlement Funding, LLC's application for approval of transfer of structured annuity benefits. Pursuant to the terms of a wrongful death settlement, Esperanza Hughes is entitled to receive monthly payments of $6,500 for the duration of her life. She contracted with Peachtree to sell a portion of her annuity ($1,500 per month for 237 months) in exchange for a lump sum cash payment of $155,107.[1] On appeal, MetLife argues the trial court erred in: (1) rewriting MetLife's contract with Hughes and others; (2) circumventing the Texas Structured Settlement Protection Act; (3) imposing the Servicing Arrangement on MetLife; and (4) finding that the transfer was in Hughes's best interest. Because we agree that Hughes was contractually prohibited from transferring the structured annuity benefits, we reverse the judgment of the trial court and remand the cause to the trial court for the entry of an order denying Peachtree's transfer application.

## BACKGROUND

After Hughes's first husband died in a collision in 1999, she entered into a Compromise Settlement Agreement with the tortfeasor and its liability insurer. The agreement provided for periodic payments to be made to Esperanza Canales-Trevino, now known as Esperanza Hughes. The liability insurer and Metropolitan Tower Resources Group, Inc. (MTRG) entered into a Uniform Qualified Assignment which provided that MTRG assumed the obligation to pay to Hughes the periodic payments in the amount of $6,500 per month for life beginning May 1, 2005. To fulfill its obligation to make the payments, MTRG purchased an annuity from Metropolitan Life Insurance Company (MLIC).

On or about March 21, 2015, Hughes entered into a Purchase Contract with Peachtree. Pursuant to the Purchase Contract, Hughes agreed to "sell, transfer and assign to [Peachtree] the right to receive" a portion of her monthly periodic payments—specifically, 237 monthly payments of $1,500 each—beginning August 1, 2015 and ending on April 1, 2035. Peachtree agreed to pay Hughes $155,107 in exchange for the rights to these payments.

Pursuant to the Structured Settlement Protection Act, Peachtree filed its "Application for Approval of Transfer of Structured Annuity Benefits," in the district court and provided notice of the proposed transfer to all "interested parties," including MetLife. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 141.004, 141.006 (West 2011). MetLife appeared and opposed the transaction by filing its "Memorandum of Law of Interested Parties ... In Objection to Application of Peachtree Settlement Funding, LLC for Approval of Transfer of Structured Settlement Payment Rights." Attached to the opposition memorandum were several exhibits, including the Compromise Settlement Agreement, the Uniform Qualified Assignment, and the Annuity. Peachtree responded by filing its "Brief in Support of Application for Transfer of Structured Settlement Payment Rights and in Reply to MetLife['s] ... Objection."

After a hearing on Peachtree's "Application for Approval of Transfer of Structured Annuity Benefits," the trial court signed a "Final Order Approving Transfer of Par-

---

1. After the hearing, but before the final order was signed, Peachtree increased the amount to be paid to Hughes from $155,107 to $158,516.92.

tial Structured Settlement Payment Rights." The final order imposed upon MetLife a servicing arrangement which required MetLife to send the entire amount of the periodic payment to Hughes's designated agent, Peachtree. Upon receipt of the periodic payment, Peachtree would retain the assigned payment ($1,500) and forward to Hughes the unassigned payment ($5,000).[2] The final order provided that Hughes would assign to Peachtree 237 monthly payments of $1,500 each, beginning August 1, 2015 and ending on April 1, 2035, in exchange for a one-time lump sum payment of $158,516.92. MetLife timely appealed.

### DISCUSSION

We first address MetLife's contractual argument. MetLife argues that by approving the transfer and imposing the servicing arrangement which required MetLife to send to Peachtree the entire amount of each periodic payment, the trial court improperly "rewrote" the governing contracts among MetLife, Hughes, and others. MetLife further argues that the record is devoid of any evidence that there was an agency agreement between Peachtree and Hughes, and that even if there were, it would not be binding on MetLife.

■■■ We review de novo issues involving the construction of an unambiguous contract. *Washington Square Fin., LLC v. RSL Funding, LLC*, 418 S.W.3d 761, 767 (Tex.App.–Houston [14th Dist.] 2013, pet. denied); *Metro. Ins. & Annuity Co. v. Peachtree Settlement Funding, LLC*, 500 S.W.3d 5, 12–13, No. 01–15–00147–CV,

2016 WL 3162770, at *5 (Tex.App.–Houston [1st Dist.] June 2, 2016, no pet. h.). We will construe unambiguous language in a contract "as a matter of law and enforce it as written." *In re Deepwater Horizon*, 470 S.W.3d 452, 464 (Tex.2015). "In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 7 (Tex.2014) (quoting *J.M. Davidson v. Webster*, 128 S.W.3d 223, 229 (Tex.2003)). Courts must "examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex.2006) (emphasis in original). Unless the agreement shows the parties used a term in a technical or different sense, the terms are given their plain, ordinary, and generally accepted meaning. *Heritage Res., Inc. v. Nations-Bank*, 939 S.W.2d 118, 121 (Tex.1996). Neither party in this case argues that the governing contracts contain ambiguous language.

We begin by reviewing the underlying agreements, which are contained in the appellate record. The Compromise Settlement Agreement contemplates a qualified assignment of the obligation to make the periodic payments to MTRG and the purchase of an annuity from MLIC. Under the terms of the Compromise Settlement Agreement, Hughes consents to the qualified assignment and agrees an annuity can be purchased to fund the obligation to make the periodic payments. In the event the annuity is purchased from MLIC,

---

**2.** The trial court's final order directed Met-Life:

> [T]o pay and remit to Peachtree (as Ms. Hughes's designated and authorized payment agent for purposes of receiving the Term Payments) 100% of the Term Pay-

ments (the monthly structured settlement/annuity payments that come due and owing by Metropolitan Tower from August of 2015 through April of 2035), when and as said payments come due.

Hughes also agrees the assignee, MTRG, "shall be the sole owner of such annuity and shall have all the rights of ownership and control of such annuity contract."[3] Finally, Paragraph 11 of the Compromise Settlement Agreement provides that:

> This Compromise Settlement Agreement, together with:
>
> A. Any annuity contract purchased to fund the periodic payments; and
>
> B. Any qualified assignment made by the insurer, constitutes the entire agreement between [Hughes and the settling defendant].

Thus, the Compromise Settlement Agreement incorporates the terms of any qualified assignment made by the insurer.

In this case, the following parties entered into a Uniform Qualified Assignment: Esperanza Canales ("claimant"); [liability insurer] ("assignor"); MTRG ("assignee"); and MLIC ("annuity issuer"). The Uniform Qualified Assignment provides, "None of the Periodic Payments may be accelerated, deferred, increased or decreased and may not be anticipated, sold, assigned or encumbered." The Uniform Qualified Assignment further provides:

> The Assignee may have the Annuity Issuer send payments under any "qualified funding asset" purchased hereunder directly to the payee(s) specified in Addendum No. 1. Such direction of payments shall be solely for the Assignee's convenience and shall not provide the Claimant or any payee with any rights of ownership or control over the "qualified funding asset" or against the Annuity Issuer.

Addendum No. 1 provides that the payee is Esperanza Canales. The annuity certificate purchased by MTRG from MLIC is also included in the record before us. It provides that MTRG "owns the annuity" and "the right at any time to designate the payee . . . to whom benefits are payable under the annuity. However, unless the Owner otherwise directs, [MLIC] will make all payments under the annuity to the person(s) named in the certificate." The certificate names Esperanza Canales as the "Measuring Life." Finally, the annuity certificate provides that the payments provided under the certificate "are nonassignable."

■ Although contracts are generally assignable, anti-assignment clauses are enforceable unless rendered ineffective by a statute. *Reef v. Mills Novelty Co.*, 126 Tex. 380, 89 S.W.2d 210, 211 (1936); *see also Cloughly v. NBC Bank–Seguin, N.A.*, 773 S.W.2d 652, 655 (Tex.App.–San Antonio 1989, writ denied) ("But where a contract expressly states that a right to payment arising under it is non-assignable, full force and effect must be given to this provision."); *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 721 (Tex. App.–Dallas 2004, no pet.). "As a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129 & n. 11 (Tex.2004); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 317(2)(b) (1981) ("A contractual right can be assigned unless . . . the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy."). Absent a successful attack upon an anti-assignment clause, a party is entitled to have

---

**3.** Paragraph 5.2 of the Compromise Settlement Agreement further provides that if the insurer makes a "qualified assignment" of the obligation to make periodic payments to MTRG, the assignment "shall be accepted by Esperanza Canales-Trevino, Plaintiff, without right of rejection . . . ."

the trial court enforce the clause. *Tex. Pac. Indem. Co. v. Atlantic Richfield Co.*, 846 S.W.2d 580, 583 (Tex.App.–Houston [14th Dist.] 1993, writ denied).

We are unaware of another Texas court that has considered whether an annuitant may transfer her right to receive a portion of structured annuity benefits to a third party notwithstanding contractual language prohibiting the annuitant from selling or transferring payment rights. Peachtree urges us to follow a recently-decided case from the First Court of Appeals, *Metropolitan Ins. & Annuity Co. v. Peachtree Settlement Funding, LLC*, 2016 WL 3162770, 500 S.W.3d 5 (Tex.App.–Houston [1st Dist.] June 2, 2016, no pet. h.) (the "*Swain*" case), in which the court affirmed the trial court's granting of Peachtree's transfer application. The *Swain* case, however, is distinguishable from the instant case in one important regard: the appellate record did not contain the underlying contracts. *See id.* at n. 6 ("We note that neither the contracts cited by MetLife nor the Wisconsin order are contained in the record."). Accordingly, the *Swain* opinion lacked any discussion regarding the effect of an anti-assignment provision. MetLife, meanwhile, urges us to follow *In re Rains*, 473 S.W.3d 461 (Tex.App.–Amarillo 2015, no pet.). *Rains*, however, is likewise devoid of any discussion regarding the effect of an anti-assignment provision. Because neither of the cited cases are instructive, we instead look outside Texas for guidance on this issue. Such authority instructs that we

must examine the underlying contracts to determine whether Hughes was permitted to transfer her right to receive structured annuity benefits to Peachtree.

In *Grieve v. Gen. Am. Life Ins. Co.*, 58 F.Supp.2d 319 (D.Vt.1999), the annuitant sought a declaration that the nonassignability provisions of the Settlement Agreement, the Qualified Assignment, and the Annuity were unenforceable as a matter of law. *Id.* at 322.[4] The *Grieve* court held that although an agreement to make future payments may generally be assigned, unambiguous contract terms prevail and will be given effect in accordance with their ordinary meaning. *Id.* In so holding, the federal district court relied in part on section 317 of the Restatement of Contracts, which provides that a contractual right can be assigned unless "assignment is validly precluded by contract." *Id.* at 322–23 (citing RESTATEMENT (SECOND) OF CONTRACTS § 317(2)(c) (1981)). Ultimately, the *Grieve* court held that "the documents' prohibitions of assignment are valid, enforceable terms." *Id.* at 323. Likewise, In *J.G. Wentworth S.S.C. Ltd. P'ship v. Callahan*, 256 Wis.2d 807, 649 N.W.2d 694 (Wis.App. 2002), the annuitant assigned his future payments, obtained in a structured settlement, to a factoring company. *Id.* at 695–96. The factoring company sought a declaration that the anti-assignment clause[5] in the settlement agreement was unenforceable. *Id.* The trial court determined that the

---

**4.** The settlement agreement provided that "the periodic payments cannot be accelerated, deferred, increased or decreased by [Grieve] or any Payee; nor shall [Grieve] or any Payee have the power to sell, mortgage, encumber, or anticipate the periodic payments, or any part thereof, by assignment or otherwise." The ensuing qualified assignment also contained the proviso that "none of the Periodic Payments may be accelerated, deferred, increased or decreased, nor may any

of them be anticipated, sold, assigned or encumbered." *Grieve*, 58 F.Supp.2d at 321.

**5.** The settlement agreement and release provided: "The future periodic payments cannot be accelerated, deferred, increased or decreased by [the annuitant] ... nor shall [the annuitant] or any beneficiary have the power to sell or mortgage or encumber same, or any part thereof ...." *Callahan*, 649 N.W.2d at 697.

assignment was void. *Id.* at 696. The Wisconsin Court of Appeals affirmed, holding that the anti-assignment language was unambiguous and showed the parties' intent to prohibit the annuitant from assigning the future periodic payments. *Id.* at 698. Similarly, in *In re Foreman,* 365 Ill.App.3d 608, 302 Ill.Dec. 950, 850 N.E.2d 387 (2006), the court examined a similar anti-assignment provision [6] and held that "[t]he clear and unambiguous language of the settlement agreement controls our analysis" and such language "should be given full effect." *Id.,* 302 Ill.Dec. 950, 850 N.E.2d at 392–93.

■■■ Here, the contract language is not ambiguous and specifically prohibits Hughes from selling, assigning, or transferring her right to receive future structured settlement payments. Hughes agreed to be bound by the terms of the Uniform Qualified Assignment and annuity contract incorporated as part of the Compromise Settlement Agreement. Peachtree attempts to deemphasize the assignment by arguing that Hughes merely designated Peachtree as her "agent" for receiving the periodic payments. However, both Peachtree's transfer application and the Purchase Contract [7] between Peachtree and Hughes make clear that Hughes agreed to "sell and assign" 237 monthly payments of $1,500 to Peachtree. Peachtree further argues that MetLife cannot attempt to restrain Hughes's property rights, which include the right to transfer the structured annuity benefits. However, as Peachtree noted in its transfer application, Hughes

does not own the structured annuity benefits. MLIC issued the annuity, and MTRG owns the annuity. Hughes is the "recipient" of the structured annuity benefits. Even if an agency designation were permitted, we doubt that it would be effective in this instance. An agency is generally a consensual relationship in which the agent consents to the control of another, the principal, and the principal manifests consent that the agent shall act for the principal. *Camp Mystic, Inc. v. Eastland,* 399 S.W.3d 266, 279 (Tex.App.–San Antonio 2012, no pet.). An essential element of an agency relationship is the principal's right to control the actions of the agent. *Sendjar v. Gonzalez,* 520 S.W.2d 478, 481 (Tex.Civ. App.–San Antonio 1975, no writ). For an agency relationship to exist, there must be (1) a meeting of the minds between the parties to establish the relationship, and (2) some act constituting the appointment of the agent. *Toka Gen. Contractors v. Wm. Rigg Co.,* No. 04–12–00474–CV, 2014 WL 1390448, at *8 (Tex.App.–San Antonio Apr. 9, 2014, pet. denied) (mem. op.). Here, however, Hughes (as principal) has no control over Peachtree (as her agent). *See Camp Mystic,* 399 S.W.3d at 279 (noting that agency relationship requires principal's right to control agent's actions). The Purchase Contract is devoid of any language indicating that Hughes has any right to control Peachtree.

■■■ Our review of the Compromise Settlement Agreement, the Uniform Qualified Assignment, and the annuity contract leads us to conclude that Hughes does not

---

6. The settlement agreement provided: "[Annuitant] acknowledges that the Periodic Payments described in Section 2 cannot be accelerated, deferred, increased or decreased by [her]; nor shall [she] have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise." *Foreman,* 302 Ill.Dec. 950, 850 N.E.2d at 388.

7. The Purchase Contract expressly provides: "This is a Purchase Contract ("Contract") *for the sale of* structured settlement payments between Hughes (You, Your), and Peachtree Settlement Funding, LLC (We, Us, Our) . . . ." (emphasis added).

have the power to sell or assign the periodic payments. The plain language of the contracts reveals that the parties intended to restrict assignments. "Absent a violation of public policy, we will not approve the voiding of unambiguous, bargained-for contract terms." *Foreman*, 302 Ill.Dec. 950, 850 N.E.2d at 394. We thus hold that the clear and unambiguous language of the contracts prohibiting assignment should be given full effect, and that the trial court erred in granting the transfer application. Accordingly, we sustain MetLife's first issue related to the underlying contracts.

### CONCLUSION

Based upon the foregoing, Peachtree's transfer application must be denied. We therefore reverse the judgment of the trial court and remand the cause to the trial court for the entry of an order denying Peachtree's "Application for Approval of Transfer of Structured Annuity Benefits." Based on our decision, we need not address MetLife's remaining arguments on appeal.

