**Opinion issued December 22, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-20-00305-CV

_____

**STEPHANIE ALLEN, MARK ALLEN, AS INDIVIDUALS,
AND ABSOLUTE LIFE WELLNESS CENTER, INC., A TEXAS
PROFESSIONAL SERVICES CORPORATION, ON BEHALF OF
THEMSELVES AND FOR ALL OTHERS SIMILARLY SITUATED,**
Appellants

**V.**

**UNITED SERVICES AUTOMOBILE ASSOCIATION, USAA CASUALTY
INSURANCE COMPANY, USAA GENERAL INDEMNITY COMPANY,
GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY,
AND USAA COUNTY MUTUAL INSURANCE,**
Appellees

**On Appeal from the 345th District Court**

## MEMORANDUM OPINION

Appellants, Stephanie Allen and Mark Allen (the "Allens"), and Absolute Life Wellness Center, Inc. ("Absolute") (collectively, "appellants"), challenge the trial court's order ruling that they lacked standing to bring suit, both individually and on behalf of classes of other policyholders and health care providers, against United Services Automobile Association, USAA Casualty Insurance Company, USAA General Indemnity Company, Garrison Property and Casualty Insurance Company, and USAA County Mutual Insurance (collectively, "USAA"), for breach of contract and violations of the Texas Insurance Code and the Deceptive Trade Practices Act ("DTPA").[2]  In two issues, appellants contend that the trial court erred in concluding that they lack standing to bring their claims against USAA.

We modify the trial court's order and affirm as modified.

---

[1]     Pursuant to its docket equalization authority, the Supreme Court of Texas transferred this appeal to this Court.  *See* Misc. Docket No. 20–9048 (Tex. Mar. 31, 2020); *see also* TEX. GOV'T CODE ANN. § 73.001 (authorizing transfer of cases). We are unaware of any conflict between the precedent of the Court of Appeals for the Third District and that of this Court on any relevant issue.  *See* TEX. R. APP. P. 41.3.

[2]     *See* TEX. BUS. & COM. CODE ANN. §§ 17.41–.63.

## Background

In their second amended petition, appellants allege that in March 2018, the Allens were insured under a standard USAA "Texas Auto Policy" with Personal Injury Protection ("PIP") coverage. According to appellants, the policy provides "coverage for all 'reasonable' and 'necessary' expenses" of up to $5,000 for each insured "that result from a covered automobile collision—without regard to the fault of the collision." Under the policy, "USAA promises to—or have someone on their behalf—review and investigate, by audit or otherwise, 'claims for benefits under this coverage to determine whether fees and expenses were reasonable and whether treatment was medically necessary and appropriate.'" USAA also "promises to pay for the medically 'necessary' and 'reasonable' charges."

Appellants further allege that on March 8, 2016, the Allens were injured in a car accident. They authorized their health care providers to file claims under their PIP policies with USAA. The reimbursable amount of the Allens' claims for payment of all reasonable and necessary treatment was reduced based on coded fee reductions. Appellants state that USAA makes such deductions with a computer database that it "has arbitrarily set . . . to automatically reduce PIP claims that exceed the [eightieth] percentile of Medicare charges for a given year plus $9.99." USAA then provides, with a fee reduction, an explanation that "[t]he charge exceeds a reasonable amount for the service provided." And it requests additional

documentation "to support the reasonableness of the charge" from the health care provider if that provider is not willing to "accept the recommended amount stated on th[e] [Explanation of Reimbursement] as payment in full . . . ."

According to appellants, the Allens also received a request for additional documentation from USAA with an accompanying appeal document. Appellants allege that USAA's appeal process "is designed to delay and deny the claim" and violates its obligation to "conduct a 'reasonable' investigation" because a request for additional documentation by USAA "always . . . results in a $0.00 reimbursement amount." The Allens concede that "the[ir] claims were ultimately paid" by USAA but maintain that "they were still injured by the delay and deception that took place prior to payment."

On behalf of themselves and a class of USAA's PIP policyholders, the Allens bring a "Bad Faith/DTPA" claim against USAA, alleging that USAA used "false, misleading, and/or deceptive . . . procedures when handling PIP claims," including: (1) "failing to promptly provide to a policy holder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim"; (2) "refusing to pay a claim without conducting a reasonable investigation with respect to the claim"; and (3) "committing unconscionable acts by committing acts or practices which, to a

4

consumer's detriment, take advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."

The Allens also bring a breach-of-contract claim under Texas Insurance Code sections 1952.156 and 1952.157[3] and the common law, alleging that USAA failed to conduct a reasonable investigation of the Allens' PIP claims and refused to reimburse the Allens for the reasonable and necessary medical expenses incurred pursuant to the terms of the PIP provisions of USAA policies as a direct and proximate result of the procedures for handling the claims.

Absolute, a health care provider, alleges that it has also experienced unlawful reductions, denials, and delays in "hundreds of PIP claims" it has billed to USAA.[4] And on behalf of itself and other similarly situated health care providers, it brings the same claims against USAA as the Allens based on "equitable assignments" from the patients it has treated who have PIP coverage from USAA.[5]

---

[3] *See* TEX. INS. CODE ANN. §§ 1952.156, 1952.157.

[4] Only Absolute brings a delay claim on behalf of the putative class, alleging that USAA violated Texas Insurance Code sections 542.055 and 542.056, which require insurers to, "not later than the 15th day . . . (1) acknowledge receipt of the claim; (2) commence any investigation of the claim; and (3) request from the claimant all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant." *See id.* § 542.055. And within fifteen days from receiving "all items, statements, and forms," "an insurer shall notify a claimant in writing of the acceptance or rejection of a claim. *See id.* § 542.056.

[5] Absolute did not provide health care services to either of the Allens.

Appellants allege that, as a result of USAA's arbitrary fee reductions and unreasonable investigation procedures, they and the putative class members have been injured and "suffered damages in the form of economic loss, loss of the benefit of the applicable insurance coverage, delay in payments, and administrative or other out of pocket costs associated with the reductions and denials to the bills submitted on USAA . . . PIP claims." According to appellants, USAA is "required to pay [appellants and the putative class members] . . . all unpaid but owed amounts, reasonable attorney's fees, a 12% penalty, and interest at the legal rate." Appellants further seek for themselves and the putative class members "a declaration from the [trial] [c]ourt that there is full coverage under the PIP coverage as provided in the insurance contract, which [USAA] breached by denying benefits owed as a direct and proximate result" of those practices.

USAA answered, generally denying the allegations in appellants' second amended petition and asserting that the Allens lack standing to bring suit against the USAA entities that did not issue an insurance policy to them and Absolute lacks standing to bring suit under the DTPA because it is not a "consumer." And Absolute cannot claim standing based on any policyholder's alleged assignment of rights, because the insureds' claims under the DTPA and Texas Insurance Code chapter 541.060 for unfair settlement practices are non-assignable. USAA also argued that

6

Absolute lacks standing under the statute governing PIP[6] and cannot bring suit for breach of contract "because it is not in privity with [USAA] and the statute is not intended to extend contract rights to medical providers."

In May 2018, appellants filed their first motion for class certification under Texas Rule of Civil Procedure 42.[7] They amended that motion in July 2018, and USAA filed its response in August 2018. In its response, USAA argued, in part, that the Allens lack standing to bring their "reasonable fee reduction," and "request for documentation" claims because neither of the Allens "claim[] to have been 'balance-billed' by their providers or otherwise [to have] sustained any legally cognizable damages as a result of any action by [USAA]."

In March 2019, the trial court issued its first certification order, denying appellants' first amended motion for class certification. The trial court stated in its order that it "[wa]s persuaded that all three of [appellants'] proposed classes satisfy the numerosity, commonality, typicality, predominance, and superiority requirements" of Texas Rule of Civil Procedure 42. But it denied the amended motion because the "record and filings before [the trial court] [we]re insufficient" to formulate a trial plan.[8]

---

[6]    *See* TEX. INS. CODE ANN. §§ 1952.151–1952.353.

[7]    *See* TEX. R. CIV. P. 42 ("Class Actions").

[8]    *See generally State Farm Mut. Auto. Ins. Co. v. Lopez*, 156 S.W.3d 550, 556 (Tex. 2004).

Appellants then amended and supplemented their motion for class certification, to which USAA responded, asserting, among other things, that appellants lack standing to bring their claims against USAA.

On February 28, 2020, the trial court issued its second certification order, denying appellants' supplemented and amended motion for class certification. In doing so, the trial court made certain findings of fact:

- The Allens do not allege that they were subjected to any delay;

- Neither of the Allens was "balance-billed" by their health care providers, and no treatment was withheld, so they have no actual damages caused by any of the billing practices allegedly implemented by USAA;

- Stephanie's claim was paid in full after her provider submitted the necessary information;

- The Allens admit that after they filed suit, USAA resubmitted and paid the original claims to the in-network provider; and

- Absolute alleges that it has received untimely explanations of benefits from USAA but does not allege that the delay caused a loss of benefits to which it was entitled.

The trial court also concluded that Absolute lacks standing because it is not a party to an insurance contract with USAA and DTPA and Texas Insurance Code claims are non-assignable. Ultimately, the trial court, "though largely persuaded that the proposed classes satisf[ied] the . . . requirements of [Texas] Rule [of Civil

8

Procedure] 42," concluded that "there is no standing among [appellants]" and, accordingly, denied appellants' supplemented and amended motion for class certification.

## Appellate Jurisdiction

As a threshold matter, we must consider USAA's argument that we lack jurisdiction over this appeal because the notice of appeal was untimely filed.

"[C]ourts always have jurisdiction to determine their own jurisdiction." *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 146 n.14 (Tex. 2012) (internal quotations omitted); *see also Royal Indep. Sch. Dist. v. Ragsdale*, 273 S.W.3d 759, 763 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (jurisdiction fundamental in nature and cannot be ignored). Whether we have jurisdiction is a question of law, which we review de novo. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007). If this is an appeal over which we have no jurisdiction, it must be dismissed. *Ragsdale*, 273 S.W.3d at 763.

Generally, appeals may be taken only from final judgments. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). Interlocutory orders may be appealed only if permitted by statute. *See Koseoglu*, 233 S.W.3d at 840; *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 352 (Tex. 2001). USAA asserts that appellants bring their appeal under Texas Civil Practice and Remedies Code section 51.014(a)(3), which provides that a party may appeal an interlocutory order that

"certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure." TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(3). Class certification appeals are accelerated appeals, which means that a party must file its notice of appeal "within 20 days after the judgment or order is signed." TEX. R. APP. P. 26.1(b). According to USAA, appellants "lost their right to an interlocutory appeal when they failed to file a timely notice of appeal from the [trial court's March 2019] certification order," which denied appellants' first amended motion for class certification. And because the trial court's February 28, 2020 certification order "do[es] not alter the fundamental nature of the class," USAA argues that the deadline for appellants to file their notice of appeal did not restart with the trial court's issuance of its February 28, 2020 order. Thus, USAA asserts that we should dismiss this appeal for lack of jurisdiction. *See Bally Total Fitness*, 53 S.W.3d at 353, 356.

But the trial court's ruling regarding appellants' lack of standing does not turn on any of the class-certification requirements set forth in Texas Rule of Civil Procedure 42. Instead, the trial court concluded, in its February 28, 2020 order, that appellants lack standing to bring their claims, whether individually or on behalf of a class, against USAA. *See M.D. Anderson Cancer Center v. Novak*, 52 S.W. 3d 704, 710 (Tex. 2001) (explaining "whether the named plaintiff is a proper class representative is not part of the standing inquiry"). If a plaintiff does not have

10

standing, the trial court lacks subject-matter jurisdiction, meaning that, if the trial court is correct that appellants lack standing, it had no authority to do anything but dismiss appellants' case. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993) (standing implicit in concept of subject-matter jurisdiction, which "is essential to the authority of a court to decide a case").

"[A] judgment's finality determines whether an appellant invoked a court's appellate jurisdiction by timely filing a notice of appeal." *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co.*, 540 S.W.3d 577, 581–82 (Tex. 2018). When, as here, "there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties." *Lehmann*, 39 S.W.3d at 205. Because the law does not require a final judgment to be in a particular form, whether a ruling is a final judgment is determined by looking at its language and the record in the case. *Id.* at 195, 205–06; *CEVA Logistics U.S., Inc. v. Acme Truck Line, Inc.*, No. 01-16-00482-CV, 2018 WL 6694606, at *2 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, no pet.) (mem. op.).

The trial court's February 28, 2020 order concludes that appellants do not have standing to bring their claims against USAA. The effect of this conclusion is

to deprive the trial court of subject-matter jurisdiction over all the claims and parties, making the ruling a final judgment. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 443.

The record shows that appellants timely filed their notice of appeal within thirty days after the trial court's February 28, 2020 order was signed. *See* TEX. R. APP. P. 26.1. Accordingly, we hold that we have jurisdiction over this appeal.

**Standing**

In their first and second issues, appellants argue that the trial court erred in concluding that they lack standing to assert their claims against USAA because the trial court was required to determining standing before considering any class-certification issues and they "satisfied the threshold requirement of . . . standing."

We review standing under the same standard by which we review subject-matter jurisdiction generally. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446. Whether a trial court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226, 228 (Tex. 2004).

**A. Procedural Complaint**

In their first issue, appellants assert that "standing must be determined before [the trial court can] consider[] [class-]certification issues." In doing so, they rely on the Texas Supreme Court's decision in *Novak*.

In *Novak*, the Texas Supreme Court stated that "before [Texas] Rule [of Civil Procedure] 42's requirements are considered, a named plaintiff must first satisfy the threshold requirements of individual standing at the time suit is filed, without regard to class claims." 52 S.W.3d at 708. But the Texas Supreme Court did not decide *Novak* based on the procedural grounds asserted by appellants, i.e., that a trial court must consider the issue of standing before it can consider class-certification issues under rule 42. Rather, the court was asked to determine "whether, in a class action context, a named plaintiff's lack of individual standing at the time suit is filed precludes the trial court's exercise of subject[-]matter jurisdiction over the class claims or whether . . . [a lack of individual standing] is simply a factor to consider in deciding whether the named plaintiff would be a proper class representative." *Id*. The court chose to follow the federal rule that "the proper inquiry is whether the named plaintiff has individual standing, not whether 'the class' does." *Id*. at 710 (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 450 (1976)). It, thus, held "that a named plaintiff's lack of individual standing at the time suit is filed deprives the court of subject[-]matter jurisdiction over the plaintiff's individual claims and claims on behalf of a class." *Id*. at 711.

Nothing in *Novak* bars a trial court from considering whether a plaintiff has standing to bring suit at any stage of a proceeding. In fact, "[a] court can—and if in doubt, must—raise standing on its own *at any time*." *Meyers v. JDC/Firethorne,*

13

*Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018) (emphasis added). And a party may challenge its opponent's standing at any stage of a proceeding. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 443–46 (declaring standing is never presumed, cannot be waived, and may be raised for first time on appeal). Thus, we conclude that the trial court did not err in considering whether appellants lack standing to bring claims against USAA at the time that it did so below.

We overrule appellants' first issue.

## B. Substantive Complaint

In their second issue, appellants assert that the trial court erred in concluding that they did not satisfy the threshold requirement of individual standing.[9]

The test for standing requires that there be a real controversy between the parties that will actually be determined by the judicial declaration sought. *Nootsie,*

---

[9] Appellants, in their briefing, refer to this issue as "conditional" and suggest that we reach it if "this Court, sua sponte, decides to analyze [a]ppellants' standing." At the same time, they explain that they "are appealing the trial court's procedural use of a certification order to reach conclusions on [a]ppellants' standing and, if need be, the merits of trial court's findings on standing." At its core, appellants' second issue challenges the merits of the trial court's conclusion that they lack individual standing to bring claims against USAA. The fact that we would not reach appellants' second issue were we to sustain appellants' first issue does not make it "conditional" in the sense that it differs from any other appellate issue. *See, e.g.*, *Lesley-McNiel v. CP Restoration Inc.*, 584 S.W.3d 579, 584 n.4 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (explaining, given disposition of second issue, this Court need not reach appellants' first and third issues); *see generally* TEX. R. APP. P. 47.1 (opinion must "address[] every issue raised and necessary to final disposition of the appeal"). We address the second issue raised by appellants and do not need to make any sua sponte inquiry related to standing.

*Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996).  Without a breach of a legal right belonging to the plaintiff, no cause of action can accrue to its benefit.  *Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976).  A plaintiff has standing if:  (1) it has sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful act of which it complains; (2) there is a direct relationship between the alleged injury and claim sought to be adjudicated; (3) it has an individual stake in the controversy; (4) the challenged action has caused it some injury in fact, either economical, recreational, environmental, or otherwise; or (5) it is an appropriate party to assert the public's interest in the matter as well as its own interest.  *Lake Medina Conservation Soc'y, Inc./Bexar-Medina-Atascosa Ctys. WCID No. 1 v. Tex. Nat. Res. Conservation Comm'n*, 980 S.W.2d 511, 515–16 (Tex. App.—Austin 1998, pet. denied); *Billy B., Inc. v. Bd. of Trs. of Galveston Wharves*, 717 S.W.2d 156, 158 (Tex. App.—Houston [1st Dist.] 1986, no writ).

A plaintiff has the burden of alleging facts that affirmatively demonstrate a court's jurisdiction to hear a case.  *Tex. Ass'n of Bus.*, 852 S.W.2d at 446.  In our review of standing, we construe the allegations in the pleadings as true and construe them in favor of the pleader.  *Id.*  We look to the facts alleged in the petition but may consider other evidence in the record if necessary to resolve the question of standing. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000); *In re Shifflet*, 462 S.W.3d 528, 537 (Tex. App.—Houston [1st Dist.] 2015, orig. proceeding).  The

15

standing inquiry "requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Heckman*, 369 S.W.3d at 153, 156 (internal quotations omitted). A challenge to standing cannot be used to require the party to prove its entire case but should be limited to facts that might be characterized as primarily jurisdictional. *See Blue*, 34 S.W.3d at 554; *In re Shifflet*, 462 S.W.3d at 537.

Appellants specifically challenge the trial court's finding that they "[did] not allege any denial of policy benefits to which they were entitled or any other actual damages." In *Allstate Indemnity v. Forth*, 204 S.W.3d 795 (Tex. 2006), the Texas Supreme Court "consider[ed] whether an insured has standing to sue her insurance company for settling her medical bills in what the insured considered to be an arbitrary and unreasonable manner" even though the insured had no out-of-pocket expenses, and her health care providers had not sought to collect any additional sum from her. *Id*. at 796.

The intermediate appellate court had concluded that if an independent review of the medical bills showed that the insurer paid less than the full amount of the insured's "reasonable expenses," then the insured "could claim injury because the terms of the insurance contract required that reasonable expenses be paid." *Id*. (citing *Forth v. Allstate Indem. Co.*, 151 S.W.3d 732, 738 (Tex. App.—Texarkana 2004), *rev'd*, 204 S.W.3d 795 (Tex. 2006)).

16

The Texas Supreme Court distinguished the insured's situation in *Forth* from those of the insureds in the cases relied on by the intermediate court of appeals—cases in which the insurers had not complied with their obligation to pay under their respective policies after an insured incurred medical expenses—finding that the insureds had standing in those cases. *Id*. at 796 & nn.1 & 2 (citing *Black v. Am. Bankers Ins. Co.*, 478 S.W.2d 434 (Tex. 1972); *Am. Indem. Co. v. Olesijuk*, 353 S.W.2d 71 (Tex. App.—San Antonio 1961, writ dism'd w.o.j.)). The court noted that the insurer in *Forth* had not questioned whether the insured had incurred medical expenses and did not refuse to pay her medical providers; instead, the insurer "paid the medical bills according to its own evaluation." *Id*. at 796.

The Court continued:

> Under Texas law, to have standing a party must have suffered a threatened or actual injury. [The insured in this case] does not claim that she has any unreimbursed, out-of-pocket medical expenses. She does not assert that the[] providers withheld medical treatment as a result of [the insurer] reducing [its] bills, or threatened to sue her for any deficiency, or harassed her in any other manner. . . . From all appearances, her medical providers have accepted the amount [the insurer] paid them without complaint, thereby satisfying [the insurer]'s obligation under the policy.

*Id*. As a result, the court concluded that the insured did not have standing to bring suit against her insurer. *Id*.

More recently, in *Farmers Texas County Mutual Insurance Co. v. Beasley*, 598 S.W.3d 237 (Tex. 2020), the Texas Supreme Court considered "whether an

17

injured plaintiff ha[s] standing to bring suit against his [PIP] policy insurer after the insurer pa[ys] the incurred medical expenses pursuant to the PIP policy, but the amount the PIP insurer pa[ys] [i]s the negotiated rate between the plaintiff's [primary] health care insurer and the medical providers—not the medical providers' list rate." *Id*. at 238. Beasley, the plaintiff and the insured, was injured in a car accident and incurred medical bills, which were initially paid by his primary insurer at a negotiated rate. *Id.* at 239. Beasley's medical providers did not attempt to charge Beasley or hold him liable for the difference between their list rates and the negotiated rates paid by his primary insurer. *Id.* Beasley later made a claim to his PIP insurer for reimbursement according to the medical providers' list rates. *Id.* He demanded that his PIP insurer pay him an additional $1,431.10, representing the difference between what the insurer paid Beasley in reimbursement for the primary insurer's negotiated rate and the PIP policy maximum. *Id.* The PIP insurer replied that Beasley was not entitled to anything beyond the amount of expenses he actually incurred. *Id*.

The trial court had concluded that Beasley did not suffer any threatened or actual harm and dismissed Beasley's suit for lack of standing, but the intermediate appellate court reversed, holding that the allegation in Beasley's petition "that the PIP insurer breached the terms of the PIP policy was sufficient to invoke the trial court's jurisdiction." *Id*. at 238 (citing *Beasley v. Farmers Tex. Cty. Mut. Ins. Co.*,

18

578 S.W.3d 98, 106–06 (Tex. App.—Tyler 2018), *rev'd*, 598 S.W.3d 237 (Tex. 2020)).

In the Texas Supreme Court, Beasley asserted that his case was distinguishable from *Forth*. *Id.* Specifically, whereas the insured in *Forth* "sought injunctive and declaratory relief, seeking to require [her insurer] to use 'an independent and fair evaluation to determine what amount of [the insured's] medical expenses were reasonable," Beasley "sued for monetary damages, seeking to recover the difference between what [the insurance company] actually paid and the PIP policy maximum." *Id*. at 242. The Texas Supreme Court found that this was a distinction without a difference: at bottom, both the *Forth* insured's claims and Beasley's claims sought to recover an amount higher than the adjusted or negotiated rates, even though the insureds incurred no out-of-pocket costs, based on the belief that their PIP policies entitled them to that recovery. *Id*. at 242–43. Because the standing question was the same in both cases, the court concluded that they both required the same answer. *Id*.

Beasley, like the insured in *Forth*, did not allege that he was responsible for any unreimbursed, out-of-pocket medical expenses, nor did he allege that he was deprived of any medical treatment because of the adjusted bills on which his insurance company based its reimbursement. *Id*. As a result, Beasley lacked standing to bring suit against the insurer. *Id*.

19

Here, the Allens do not allege that they paid, or were asked by their health care providers to pay, any portion of the bills that USAA had declined to fully reimburse. Nor have they alleged that they incurred any out-of-pocket expenses as a result of USAA's discounting and claim processing practices.[10] Absolute has not asked its patients to pay any portion of its bills that USAA has not reimbursed or alleged that it has refused to accept the discounted reimbursements as payment.

Despite any difference in the legal theories employed, appellants' complaints are substantially the same as those alleged in *Forth* and *Beasley*: They assert that the insurer has used discounting methods and claim processing procedures that resulted in arbitrary and unreasonable reductions in the amount of benefits to which they believe themselves entitled. *See Beasley*, 598 S.W.3d at 242. Yet, the Allens have not alleged that their insurer's actions personally caused them any actual harm, in that they have not been billed for or deprived of medical treatment because of their insurer's actions.

For these same reasons, Absolute has no standing to the extent that it relies on any "equitable assignment" of claims from its patients who have received treatment

---

[10]     *Beasley* also makes clear that the Allens have no standing based on a claim that they have not received the maximum $5,000 benefit permitted under their PIP policies. *See Farmers Tex. Cty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 239 (Tex. 2020). The Allens are not harmed simply because their maximum PIP benefits were not exhausted. For this reason, the parties' dispute over when USAA tendered a check to Mark for the balance of the maximum recoverable amount available under his policy is immaterial.

under USAA PIP policies. And, as USAA points out, its policy also expressly prohibits the assignment of policy rights without USAA's consent. Anti-assignment clauses are enforceable unless rendered ineffective by a statute. *Reef v. Mills Novelty Co.*, 89 S.W.2d 210, 211 (Tex. 1936); *In re Hughes*, 513 S.W.3d 28, 34 (Tex. App.—San Antonio 2016, pet. denied); *see Colvin v. Transp. Ins. Co.*, No. 01-96-00528-CV, 1996 WL 711260, at *2 (Tex. App.—Houston [1st Dist.] Dec. 12, 1996) (not designated for publication) ("Texas courts have consistently enforced non-assignment clauses in various situations."); *see also In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129 & n.11 (Tex. 2004) ("As a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy."). Absolute does not reason that we should refuse to enforce the anti-assignment clause. And because Absolute has no right to sue under any USAA policy, it has no standing to assert any statutory violation based on the policy. *See Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 813 (Tex. 2019) (claim under Texas Insurance Code chapter 542, the Prompt Payment of Claims Act, requires proof that insurer is liable under policy). A right to statutory damages under the Texas Insurance Code requires as a predicate the breach of a contractual right belonging to the insured. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 (Tex. 2018).

Based on the foregoing, we hold that the trial court did not err in concluding that appellants lack standing to bring their claims against USAA.

We overrule appellants' second issue.

## Conclusion

Because appellants lack standing to bring suit against USAA, the trial court had no authority to do anything but dismiss appellants' case. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 443. We therefore modify the trial court's February 28, 2020 order to eliminate its advisory opinion on the propriety of class certification and dismiss the case for lack of jurisdiction. We affirm the trial court's order as modified.

Julie Countiss
Justice

Panel consists of Justices Keyes, Hightower, and Countiss.

22