2026 IL App (1st) 251378-U

FIRST DISTRICT,
SIXTH DIVISION
June 26, 2026

No. 1-25-1378

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| OMEGA DEMOLITION CORP., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Appeal from the |
| v. | ) | Circuit Court of |
| | ) | Cook County, Illinois. |
| JUDLAU CONTRACTING, INC., ILLINOIS | ) | |
| STATE TOLL HIGHWAY AUTHORITY, | ) | No. 2016 CH 11681 |
| TRAVELERS CASUALTY AND SURETY | ) | |
| COMPANY OF AMERICA, ZURICH AMERICAN | ) | Honorable |
| INSURANCE COMPANY, and LIBERTY | ) | Anthony C. Kyriakopoulos, |
| MUTUAL INSURANCE COMPANY, | ) | Judge Presiding. |
| | ) | |
| Defendants-Appellees. | ) | |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held:*  Under the first-to-breach doctrine, a subcontractor who was the first to breach the subcontract by failing to procure the requisite insurance for the general contractor cannot maintain a breach of contract suit against the general contractor for nonpayment. We affirm the trial court's grant of summary judgment for the general contractor.

¶ 2 Defendant Judlau Contracting, Inc., as general contractor on a highway construction job, subcontracted out demolition work to plaintiff Omega Demolition Corp. Three months after Omega began work, one of Omega's employees was killed on the job. Judlau terminated the subcontract and did not pay Omega for the work it had performed.

¶ 3 Omega brought a breach of contract suit against Judlau. Applying the first-to-breach rule, the trial court granted summary judgment to Judlau, finding Judlau's nonperformance was excused by Omega's failure to procure liability insurance coverage for Judlau as required by the subcontract. We affirm.

¶ 4 I. BACKGROUND

¶ 5 In late 2015, the Illinois State Toll Highway Authority ("ISTHA") contracted with Judlau to perform road and bridge construction on the Jane Addams Tollway portion of Interstate 90 (the project). On December 8, 2015, Judlau and Omega entered a subcontract for Omega to remove six existing bridge overpasses for a price of $1,892,000.

¶ 6 Section 14 of the subcontract required Omega to procure insurance coverage prior to starting work. As set forth in attachment C, Omega was to obtain "Commercial General Liability Form CG0001 (ed. 10/93) Occurrence Form or equivalent." Attachment C had a no-waiver clause providing that "[Judlau's] failure to identify insurance deficiencies does not relieve [Omega] from any insurance obligations."

¶ 7 Prior to commencing work, Omega obtained a commercial general liability policy from James River Insurance Company (James River). Judlau was named as an additional insured. The policy contained Form CG0001-1207 (the equivalent of the form specified in the subcontract), with a standard exclusion for bodily injury to an employee of "the" insured arising in the course of employment by "the" insured. However, the policy also contained an endorsement which

excluded coverage for bodily injury to an employee of "any" insured arising in the course of employment by "any" insured.

¶ 8    Regarding payments, section 37 of the subcontract required Judlau to make progress payments to Omega within 15 days of ISTHA paying Judlau for the work Omega performed. Section 38(e) gave Judlau discretion to withhold payments "in the event there is a possible or actual personal injury or property damage claim arising from the performance of the Subcontract Work."

¶ 9    Omega began its demolition work on or about January 1, 2016. Judlau first received payment from ISTHA for Omega's work on March 1, and received additional payments on March 7, March 23, April 13, April 25, and May 18. Initially, Judlau withheld payment from Omega because Judlau did not have an executed copy of the subcontract, which its project management computer program required to generate payments to a subcontractor. On March 14 and 15, Judlau project manager Michael Osika sent emails to Omega asking, "Can you give me an ETA on the signatures?" and "Any luck on the signatures? Want to process so we can get Omega paid for work performed." On March 22, Omega sent Judlau an executed copy of the subcontract.

¶ 10    On April 5, Vincente Santoyo, an Omega employee, was killed on the job by falling steel beams. The next day, a special administrator for Santoyo's estate filed a wrongful death lawsuit against Judlau and other parties. Judlau tendered its defense to James River, which declined the tender on May 3, citing the endorsement excluding coverage for bodily injury to an employee of any insured. On May 9, James River filed a declaratory judgment action against Judlau seeking a declaration that it was not liable for coverage or defense under the policy.

¶ 11        Meanwhile, on April 14, ISTHA notified Judlau that it was revoking its approval of Omega as a project subcontractor. On April 15, Judlau advised Omega that it was terminated for cause. Judlau directed Omega to cease work and demobilize from the project, which Omega did. Judlau never paid Omega anything for the three months of work it performed.

¶ 12        On September 2, 2016, Omega filed the instant complaint against Judlau, ISTHA, Travelers Casualty and Surety Company (Travelers), Zurich American Insurance Company (Zurich), and Liberty Mutual Insurance Company (Liberty). In its amended complaint, Omega alleged that under the subcontract, Judlau owed Omega $842,315 for labor and materials, plus the reasonable value of the scrap materials generated by Omega's work, which was over $184,900. Omega sought an accounting as to the amount it was due (count I) and damages for breach of the subcontract (count II). Omega also asserted a claim against Judlau's project surety payment bond (count III) and a claim for interest under the State Prompt Payment Act (30 ILCS 540/7 (West 2016)) (count IV).

¶ 13        Judlau filed an answer in which it asserted, as an affirmative defense, that Omega breached the contract by failing to procure the requisite liability insurance coverage for Judlau. Judlau also filed a counterclaim for breach of contract, seeking compensation for "claims and potential damages" incurred in the Santoyo action.

¶ 14        While the present action was pending, the circuit court in the insurance coverage action granted summary judgment in favor of Judlau. On appeal, we reversed, finding James River did not have a duty to defend the Santoyo action due to the employer's liability exclusion in the policy and directing summary judgment to be entered for James River. *James River Insurance Co. v. Judlau Contracting, Inc.*, 2019 IL App (1st) 181993-U.

¶ 15    On October 11, 2023, Omega filed two motions for partial summary judgment. In the first motion, Omega sought a determination that it did not breach its contractual obligation to provide insurance coverage for Judlau or, alternatively, Judlau waived objection to the coverage by allowing Omega to commence work. In the second motion, Omega sought a determination that Judlau breached its payment obligations by failing to pay Omega within 15 days of receiving payment from ISTHA.

¶ 16    Judlau filed a cross-motion for partial summary judgment on the insurance issue, arguing the employer's liability exclusion negated the coverage to which Judlau was contractually entitled. Judlau also filed a response on the payment issue arguing that (1) Omega was the first to breach the contract by not procuring the proper insurance, and (2) Omega delayed the processing of its own payments by not sending Judlau a signed copy of the subcontract until March 22.

¶ 17    On July 11, 2024, the trial court ruled in favor of Judlau on its cross-motion and against Omega on both of its motions, granting summary judgment to Judlau as to liability on the insurance and payment issues. In light of the court's rulings on liability, on April 30, 2025, defendants filed a joint motion for summary judgment on Omega's complaint. On July 3, 2025, the trial court granted the motion, entering summary judgment for defendants on counts II and III and dismissing counts I and IV with prejudice. Pursuant to Rule 304(a) (eff. Mar. 18, 2016), the court found no just reason for delaying enforcement or appeal. Judlau's counterclaim remains pending below.

¶ 18                                    II. ANALYSIS

¶ 19    Summary judgment is proper where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal there is no issue as to any material fact and the movant is entitled to judgment as a matter of law. See 735

ILCS 5/2-1005(c) (West 2018). Where the parties file cross-motions for summary judgment, they agree there are no genuine issues of material fact and ask the court to decide the questions presented as a matter of law based on the record. *Casey's Marketing Co. v. Hamer,* 2016 IL App (1st) 143485, ¶ 11. We review the circuit court's grant of summary judgment *de novo. Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008).

¶ 20        Substantial performance is a necessary element of a breach of contract claim. *PML Development LLC v. Village of Hawthorn Woods*, 2023 IL 128770, ¶ 50. Thus, to recover on a breach of contract claim, a plaintiff must have performed its part of the contract. *Id.* Conversely, the first-to-breach rule excuses a party's duty to perform under the contract if the other party materially breached the agreement first. *Id.*; see also *William Blair & Co., LLC v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 346 (2005) ("a material breach of a contract provision by one party will justify nonperformance by the other"); *LB Steel, LLC v. Carlo Steel Corp.*, 2018 IL App (1st) 153501, ¶ 34 (where sub-subcontractor materially breached contract, subcontractor was entitled to withhold payment).

¶ 21        Here, although Judlau did not pay Omega for the work it performed, the trial court found Judlau's nonperformance was excused because Omega breached the contract first by failing to provide the requisite insurance coverage. Omega argues the trial court's finding was in error because (1) the insurance satisfied the contract; (2) in the alternative, Omega's breach did not occur until Judlau sustained damages in the Santoyo lawsuit, so Judlau was the first to breach; (3) Judlau waived any objection to the insurance; and (4) Omega's breach is nonmaterial under the partial breach doctrine. We consider these contentions in turn.

¶ 22                                    A. Insurance Coverage

¶ 23        Omega first argues that it complied with the terms of the contract as to insurance. We

disagree.

¶ 24        The contract required Omega to obtain "Commercial General Liability Form CG0001

(ed. 10/93) Occurrence Form or equivalent." As Judlau acknowledges, Form CG0001-1207 in

the James River policy is the equivalent of the form specified in the contract. It contains a

standard exclusion for bodily injury to an employee of "*the* insured" arising in the course of

employment by "*the* insured." (Emphasis added.) As explained by the trial court in its July 11,

2024 summary judgment order, it is typical for CG0001 policies to exclude bodily injury

coverage to employees of the insured, since they would be covered by workmen's compensation.

¶ 25        However, the endorsement excluded coverage for bodily injury to an employee of "any"

insured arising in the course of employment by "any" insured. This is a significantly broader

exclusion than included in Form CG0001, since the word "any" excludes coverage not just to the

employer, but also to additional insureds, as illustrated by the facts of this case where Judlau was

not covered for bodily injury to Omega's employee. See *James River*, 2019 IL App (1st)

181993-U.

¶ 26        Omega nevertheless argues there was no breach because the subcontract did not prohibit

policy endorsements. This argument is spurious. Although endorsements are not *ipso facto*

prohibited, the endorsement in this case served to negate the typical bodily injury coverage that

would be provided in a CG0001 policy. Since the coverage that was procured was not the

coverage that was contractually obligated, the trial court correctly found that Omega breached

the contract.

¶ 27                                    B. Timing of the Breach

¶ 28        Omega argues that its breach, if any, did not occur until Judlau incurred expenses in connection with the Santoyo lawsuit, thus making Judlau the first to breach. We disagree, finding that Omega breached first by failing to procure the requisite insurance coverage.

¶ 29        "For contract actions and torts arising out of contractual relationships, *** the cause of action ordinarily accrues at the time of the breach of contract, not when a party sustains damages." (Internal quotation marks omitted.) *American Family Mutual Insurance Co. v. Krop*, 2018 IL 122556, ¶ 17. Applying this rule, our supreme court in *Krop* found plaintiffs' cause of action for sale of a deficient insurance policy accrued on the date the allegedly deficient policy was procured, not on the date the insurer refused to provide coverage. *Id.* ¶ 19. Similarly, Omega's breach occurred when the James River policy was procured. We reject Omega's argument that *Krop* is inapplicable because it "does not involve a situation *** involving a contractor and a subcontractor." This is a distinction without a difference. *Krop*'s holding as to when a breach of contract action accrues is equally applicable to the instant facts.

¶ 30        In the alternative, Omega argues its breach was initially nonmaterial and did not become material until sometime later, such that Judlau was the first party to commit a *material* breach. Omega's exact theory as to when its breach became material is unclear, since it cites multiple potential triggering events: Santoyo's death, James River's denial of coverage, and Judlau's expenditure of funds in connection with the Santoyo lawsuit.

¶ 31        A breach is material if it is "so substantial and fundamental as to defeat the objects of the parties in making the agreement" or the failure to perform "renders performance of the rest of the contract different in substance from the original agreement." *Slyce Coal Fired Pizza Co. v. Metropolitan Square Plaza, LLC*, 2025 IL App (1st) 221279, ¶ 139. In other words, the breach

must be so significant that the injured party is justified in regarding the whole transaction at an end. *Id.* In determining whether a breach is material, courts consider

> "whether the breach worked to defeat the bargained-for objective of the parties or caused disproportionate prejudice to the non-breaching party, whether custom and usage considers such a breach to be material, and whether the allowance of reciprocal non-performance by the non-breaching party will result in his accrual of an unreasonable or unfair advantage." (Internal quotation marks omitted.) *Direct Auto Insurance Co. v. O'Neal*, 2022 IL App (1st) 211568, ¶ 15.

¶ 32     Omega cites no authority for its theory that, in a breach of contract suit, a breach may initially be considered nonmaterial and then later be "upgraded" to material as events unfold. In the absence of authority, this argument is forfeited. See *Gakuba v. Kurtz*, 2015 IL App (2d) 140252, ¶ 19 (appellant forfeited issue by failing to cite legal authority). Moreover, in our own research, we have found no case law to support this novel theory, which we decline to adopt. Accordingly, we agree with the trial court's finding that Omega materially breached the contract prior to the commencement of the work and prior to any breach by Judlau.

¶ 33                              C. Waiver

¶ 34     Omega next argues that Judlau waived any objection to the insurance by allowing Omega to start work.

¶ 35     Waiver is the intentional relinquishment of a known right. *Midwest Builder Distributing, Inc. v. Lord & Essex, Inc.*, 383 Ill. App. 3d 645, 673 (2007). In contract law, courts will not imply waiver from conduct unless there has been reliance by the other side or waiver is "clearly inferable from the circumstances." (Internal quotation marks omitted.) *Id.* The party asserting waiver bears the burden of proof. *In re Nitz*, 317 Ill. App. 3d 119, 130 (2000).

¶ 36        Here, Omega does not claim reliance, nor are there any circumstances clearly indicating waiver. Omega asserts, without citation to the record, that Judlau "played an active role" in the process of procuring insurance by "request[ing] certain wording" and "reject[ing] certain wording." Omega's failure to provide citations is in violation of Rule 341(h)(7) (eff. Oct. 1, 2020). See *Travaglini v. Ingalls Health System*, 396 Ill. App. 3d 387, 405 (2009) (it is not the appellate court's responsibility to scour the record in search of facts that support a party's contention). More importantly, even if true, Omega's assertions do not indicate that Judlau intentionally relinquished its right to CG0001 bodily injury coverage. On the contrary, attachment C of the contract expressly provides: "Contractor's failure to identify insurance deficiencies does not relieve the Subcontractor from any insurance obligations." Particularly considering this clause, Omega has not met its burden of showing "a clear, unequivocal, and decisive act" by Judlau demonstrating an intent to waive its rights under the contract. See *Nitz*, 317 Ill. App. 3d at 130.

¶ 37                                    D. Partial Breach

¶ 38        Lastly, Omega argues that summary judgment was improper because there is a triable issue of fact under a partial breach theory. See *PML Development*, 2023 IL 128770, ¶¶ 51-52; *Dustman v. Advocate Aurora Health, Inc.*, 2021 IL App (4th) 210157, ¶ 38. This argument was not raised in the trial court, nor was it raised in Omega's initial brief before this court. Instead, Omega raised it for the first time in its reply brief. Defendants filed a motion to strike this portion of Omega's reply brief, which we have taken with the case.

¶ 39        "Issues not raised in the trial court are forfeited and may not be raised for the first time on appeal." *Dumas v. Pappas*, 2014 IL App (1st) 121966, ¶ 21. Moreover, a claim raised for the

first time in a reply brief is forfeited. *Morse v. Donati*, 2019 IL App (2d) 180328, ¶ 28; see Ill. S. Ct. Rule 341(h)(7) (eff. Oct. 1, 2020).

¶ 40    Omega's failure to raise this issue in the trial court is not merely a technical violation; it has prevented the record from being developed, thus precluding meaningful review by this court. Under the partial breach doctrine, a nonbreaching party may lose its right to assert the first-to-breach rule if it accepts the benefits of the contract despite the other party's material breach. *PML Development*, 2023 IL 128770, ¶ 51. As explained by our supreme court:

> "[F]ollowing a material breach, the injured party reaches a fork in the road: it may either continue the contract (retain its benefits of the bargain and sue for damages) or repudiate the agreement (cease performing and sue for damages). [Citations.] If the party elects to continue with the contract, it cannot suspend performance later and then claim it had no duty to perform based on the first material breach. This election converts the material breach to a 'partial' breach." *Id.* ¶ 52; see also *Dustman*, 2021 IL App (4th) 210157, ¶ 38.

¶ 41    The partial breach doctrine necessarily contemplates that the nonbreaching party is aware of the breach and makes a deliberate decision to continue with the contract. Because this issue was not previously raised, the record has not been developed as to whether Judlau had actual knowledge of Omega's breach which it elected to disregard prior to its termination of the subcontract on April 15, 2016.

¶ 42    We note this litigation has been ongoing for nearly a decade. Omega has waited until its appellate reply brief to raise the issue of partial breach, which has not been factually developed in the trial court. Under these circumstances, we decline to overlook Omega's forfeiture. Defendants' motion to strike section B of Omega's reply brief is granted.

¶ 43                                III. CONCLUSION

¶ 44        For the foregoing reasons, we find Omega was first to breach the contract through its failure to procure the requisite insurance and the trial court correctly granted summary judgment to defendants on that basis. We grant defendants' motion to strike section B of Omega's reply brief and need not consider the parties' remaining arguments regarding the payment provisions of the subcontract.

¶ 45        Affirmed.